HON. HOYT H. WHEELER, ⎫
HON. TIMOTHY P. REDFIELD, ⎬ ASSISTANT JUDGES.
HON. H. HENRY POWERS,* ⎭

---

## BRINK & CO. v. THE MERCHANTS & MECHANICS INSURANCE CO.

### Contract. Insurance. Change of Occupation. Evidence.

One of the conditions of a policy of insurance was, that "if the occupation of the premises should be changed from one of the class denominated extra hazardous, or specially hazardous, to that of another of the same class, except as specially agreed to in writing upon the policy, then, so long as the same should be so appropriated, the policy should cease and be of no force." Upon the back of the policy was a division of risks into three classes denominated hazardous, extra hazardous, and specially hazardous. There was no specific reference in any of the three classes to any of the manufactures at any time carried on upon the premises insured, but there was a general mention in the third class of "all workshops, mills and manu-

---

* BARRETT, J., was present in place of POWERS, J., at the hearing of some cases upon trial of which in the County Court, POWERS, J., presided.

facturing establishments," not enumerated in either of the two other classes. The property in question was insured as of the third class, and was described in the policy as "occupied for the manufacture of toys." The insurance agents examined the premises fully, and knew that some custom sawing and planing, and turning of mop-handles, had been done there for several years, and in placing the insurance they acted upon their own personal acquaintance with the property, and upon what they observed and learned upon the premises just before writing the policy. After the insurance was effected, the property was used for the manufacture of toy trunks, nursery chairs, berry and market baskets, table mats, chair stretches, and mop-handles, and also for doing a very small amount of custom sawing and planing. *Held*, that there was no change of occupation within the meaning of said condition; that there was no such change of use of the property as to work harm to defendant or vitiate the policy; and that the knowledge of the agents as to the character of the property and the manner in which it had been used before insurance was effected, was full notice to defendant of all material facts touching the use of the premises in that manner.

A policy of insurance should be construed most strongly against the insurer, and liberally in favor of the assured.

The tenant of the premises insured, who had charge of all the business done thereon, and knew all of its details and processes, was produced as a witness, and asked if the business he was carrying on at the time of the fire was any more hazardous to the insurance than the manufacture of toys. The answer thereto *held* admissible.

Plaintiffs offered evidence of the admissions of L., whom their evidence tended to prove to have been the agent of defendant, specially authorized to settle their loss. *Held*, admissible.

ASSUMPSIT upon a policy of insurance. Plea, the general issue, with notice of special matter, and trial by jury, May Term, 1876, BARRETT, J., presiding.

The policy in question was issued by the defendant company through its agents at Bellows Falls, on August 1, 1874. The property insured thereby was destroyed by fire on April 28, 1875. Upon the back of the policy was a division of risks into three classes, denominated hazardous, extra hazardous, and specially hazardous. There was no specific reference in any of the three classes to any of the manufactures carried on upon the premises after the issuing of the policy; but there was a general mention in the third class, of " all workshops, mills, and manufacturing establishments " not " enumerated as hazardous or extra hazardous ;" and the premises in question were considered as the highest grade of risk, and the highest rate was paid for the insurance thereon. Among the conditions of the policy, was one providing that if the premises insured should " be occupied or used so as to increase the risk," or if " the risk " should be " increased * * *

by any means whatever within the control of the assured, without the assent of the company indorsed " upon the policy, then the policy should " be void ;" and also one providing that " if the occupation of such premises " should be " changed from one of the class denominated extra hazardous, or specially hazardous, to that of another of the same class, except as specially agreed to in writing upon the policy, then so long as the same should be so appropriated, the policy should cease and be of no force." The property insured was described in the policy as " a new frame manufacturing building and office and ells attached, with fixed and movable machinery therein, situate in Springfield, and occupied for the manufacture of toys."

It appeared that on July 22, 1874, one of said agents visited the premises in question, at the request of the plaintiffs, and, in company with some of them, made an examination thereof; that the premises had then been leased to one Ellis, who, with others, was to engage in some kind of manufacturing not then precisely determined upon, under the style of the Industrial Works; that the agent was then so informed by one of the plaintiffs, and that Ellis was then engaged in business upon the premises, and employing three or four men. It further appeared, that immediately after the agent went home after said examination, the plaintiffs, pursuant to an understanding had with him, sent him a plan and a written description of the property, indicating buildings, rooms, location, the character and extent of the different kinds of property upon which insurance was desired, and other details; that said agent and his partner, who had examined the property repeatedly in previous years, and had also effected insurance upon it, upon consultation, issued the policy in question as before stated. Both of said agents testified, and their testimony was not contradicted, that in taking the insurance in question, they acted upon their own knowledge of the property, acquired by their own observation; and that the clause, " occupied for the manufacture of toys," was copied from an old policy, and written by their clerk without their knowledge. It appeared also, that there were a saw-mill, two planers, and a forge upon the premises, but that the forge was not used; that the saw-mill and

planers were used in preparing lumber for the making of toys, and a little occasionally in doing custom work ; that the premises had been occupied for several years in the making of toy dolls, for doing planing and sawing, and for turning mop-handles, which was known to one of said agents at the time the policy in question was issued, and that soon after the date of said policy, Ellis began to make toy trunks, nursery chairs, and market baskets, and, in the ensuing winter, table mats, mop-handles, and chair backs and stretchers. It further appeared that substantially the same machinery was used at the time of the fire that was there when the policy was issued. although there had been some slight changes to adapt it to the different kinds of manufacturing ; that the plaintiffs never gave the defendant any notice of the various changes in manufacture, and that said changes did not increase the risk, but on the contrary greatly diminished it. The plaintiffs produced Ellis as a witness, who testified that the risk was no greater by reason of the business he was carrying on at the time of the fire than it was when he was making toys. To the admission of that evidence the defendant objected ; but it was admitted ; to which the defendant excepted.

The plaintiffs also introduced as a witness, J. W. Pierce, who testified to some acts, conversations, and correspondence in reference to the settlement of this loss, with one Lester, whom the plaintiffs' evidence tended to prove was the agent of defendant, specially authorized in writing by defendant to settle this loss. Said Lester was not in court. To all of said Pierce's testimony the defendant objected, but the court admitted it ; to which defendant excepted. All the testimony of Pierce, however, became immaterial, no question being submitted to the jury upon which the same had any bearing.

The defendant requested the court to charge, among other things, that if, at the time the insurance was effected, the plaintiffs made any false representations as to the occupancy of the building, either in regard to who was occupying it, or to the purposes for which it was used, or to the exposure thereof, or concealed any fact in any manner affecting the risk, they could not recover ; that

the neglect of the plaintiffs to mention in their application the occupation of a part of the property insured by a saw-mill, a planing-mill, and a lathe, was fatal to their claim, even though the agent saw the property and knew how it was occupied, and that their omission to state correctly every fact material to the risk, whether intentional or not, rendered their policy void; that if there had been any change in the business, either by increase or by change to another kind, without the knowledge or consent of the defendant, then the plaintiffs could not recover, even though the fire might not have been caused by it; and that the policy contained the contract of the parties, and should be strictly construed; that all matters of fact stated therein as having been stated by the plaintiffs, were warranties; and that if any of the conditions of the policy had been broken, the policy was vitiated.

The court charged that the party making application for insurance was bound to good faith, and to care and reasonable diligence in making representations and exposures of the property—was bound, so far as he did anything that would affect the judgment and action of the agent, to the utmost good faith, and that, as the agent would be governed by the nature of the risk in determining whether to make the insurance, he was also bound to be free from any negligence in regard to the property and its condition, and everything appertaining to it, that would materially affect the risk; that he was also bound to good faith and care after insurance was effected, so as not by any carelessness to increase the hazard assumed by the company in view of all that was made known to the company and upon which it acted at the time of effecting the insurance; that the expression, " and occupied for the manufacture of toys," did not of itself constitute a warranty on the part of the plaintiffs that the building should not be used for any other purpose; that the parties were at liberty to do their work, using substantially the same machinery, with changes of detail adapting it to the purposes designed, and working upon the same kind of material, unless the doing of such work increased the peril by fire, but that if it did increase the peril, then they could not recover upon their policy; and that the policy as

a contract was subject to the ordinary rules of law governing contracts, so that the plaintiffs, to have the advantage of it, must have performed its conditions on their part.

So far as the charge did not comply with said requests, defendant excepted. Verdict for plaintiffs.

*A. M. Allbe* (*Norman Paul* with him), for the defendant.

Contracts of insurance should be construed with the greatest strictness. The utmost good faith is required by both the insurer and the assured. The policy usually contains the stipulations of the contract, and should be specific. Once issued and accepted by the assured, its terms cannot be varied without the consent of both parties. Insurance companies have the right to make their own regulations, and when they have done so, they are bound to comply with them, and the assured when he accepts a policy, engages to abide by and perform all the stipulations imposed upon him by its terms. *Dutton* v. *Vt. Mutual Fire Ins. Co.* 17 Vt. 369; *Williams* v. *Vt. Mutual Fire Ins. Co.* 20 Vt. 222; *Wilson* v. *Ætna Ins. Co.* 27 Vt. 99. The policy upon which the plaintiffs predicate their claim, purports to insure certain property stipulated to be occupied for the manufacture of toys, and for no other purpose. The plaintiffs' right of recovery depends upon the construction to be given to the language used by them, and the representations made in describing the property. The law of insurance requires the utmost good faith, and all misrepresentations and concealments material to the risk, vitiate the policy, although such representations are by parol, they being regarded as fraudulent. *Farmers Mutual Fire Ins. Co.* v. *Marshall*, 29 Vt. 23.

Three classes of risks, denominated hazardous, extra hazardous, and specially hazardous, were named on the back and in the printed part of the policy. The plaintiffs' property was included in the third class. Section five of the printed part of the policy provided that, if the premises should be used for any " trade, business or vocation, or for storing, using or vending therein any of the articles, goods or merchandize denominated extra hazardous, or specially hazardous, in the class of hazards " printed on the back of

the policy—or if the occupation of the premises should be changed from one of the " classes denominated extra hazardous or specially hazardous to that of another of the same class," except as therein specially agreed to in writing, upon the policy, then and from thenceforth, so long as the same should be so " appropriated, applied or used," the policy should cease and be of no force or effect. The policy was therefore rendered void by the changes made by plaintiffs. Plaintiffs were strictly bound by the words, " and occupied for the manufacture of toys," written in the policy, and the charge that they did not constitute a warranty was erroneous. May Ins. 231, 253 ; *Lee* v. *Howard Fire Ins. Co.* 3 Gray, 583 ; *Barrett* v. *Union Mutual Fire Ins. Co.* 7 Cush. 175 ; *Whitemarsh* v. *Charter Oak Fire Ins. Co.* 2 Allen, 581 ; *Houghton* v. *Manufacturers Mutual Fire Ins. Co.* 8 Met. 114 ; *Macomber* v. *Howard Fire Ins. Co.* 7 Gray, 257 ; *Jennings* v. *Chenango County Mutual Ins. Co.* 2 Denio, 75 ; *Merriam* v. *Middlesex Mutual Fire Ins. Co.* 21 Pick. 162 ; *Wetherell* v. *City Fire Ins. Co.* 16 Gray, 276 ; *Pierce* v. *Empire Ins. Co.* 62 Barb. 636 ; *Sarsfield* v. *Metropolitan Ins. Co.* 61 Barb. 479 ; *Wall* v. *East River Ins. Co.* 3 Duer, 264 ; s. c. 3 Selden, 370 ; *Williams* v. *New England Mut. Ins. Co.* 31 Me. 219 ; 2 Parsons Cont. (5th ed.), 424, 425 ; *Holby* v. *Dana,* 17 Barb. 111 ; *Lyman* v. *State Mutual Fire Ins. Co.* 14 Allen, 329 ; *Richards* v. *Protection Ins. Co.* 30 Me. 273 ; *Williams* v. *New England Mutual Fire Ins. Co.* 31 Me. 219 ; *Shepard* v. *Union Mutual Fire Ins. Co.* 38 N. H. 232 ; *Wood* v. *Hartford Fire Ins. Co.* 13 Conn. 533 ; *Mead* v. *Northwestern Ins. Co.* 7 N. Y. 530 ; *Pindar* v. *Continental Ins. Co.* 38 N. Y. 364 ; *Pindar* v. *Resolute Fire Ins. Co.* 47 N. Y. 114 ; *Jones* v. *Fireman's Fund Ins. Co.* 51 N. Y. 318 ; *Ripley* v. *Ætna Ins. Co.* 30 N. Y. 136.

The ruling of the court allowing the witness Ellis to testify as to whether the changes that had been made in the property insured increased the risk, was incorrect, as he was not an expert. Underwriters, even, are not permitted to testify to their opinions as to the nature of a risk—whether more or less hazardous. *Hartford Protection Ins. Co.* v. *Harmer,* 2 Ohio St. 452 ; *Merchants & Man. Mut. Ins. Co.* v. *Washington Ins. Co.* 1 Handy (Ohio), 408. Re-

sides, whether or not the change in the use or occupation of property increased the risk, was to be determined by the jury from the facts in the case, and was not a subject for expert testimony. May Ins. 719; *Fraser* v. *Tupper*, 29 Vt. 409; *Crane* v. *Northfield*, 33 Vt. 124; *Lee* v. *Howard Ins. Co.* 3 Gray, 583; *Mulry* v. *Mohawk Valley Ins. Co.* 5 Gray, 541; *Lincoln* v. *Barre*, 5 Cush. 590; *Lyman* v. *State Mutual Fire Ins. Co.* 14 Allen, 329; *Luce* v. *Dorchester Mutual Fire Ins. Co.* 105 Mass. 297; *Joyce* v. *Maine Ins. Co.* 45 Me. 168; *Jefferson Ins. Co.* v. *Cotheal*, 7 Wend. 73; *Schmidt* v. *Peoria Fire & Marine Ins. Co.* 41 Ill. 295; *Connell* v. *Phœnix Ins. Co.* 59 Me. 582; *Northrup* v. *Mississippi Valley Ins. Co.* 47 Mo. 435, 443.

*Ex-parte* depositions and affidavits are never admissible as evidence on the trial of a case. The original proof of loss, to which was attached the three affidavits, was improperly admitted as evidence in chief, as they were drawn by the plaintiffs, and were in the nature of declarations made by a party in his own favor. *Lafayette B. & Miss. R. R.* v. *Winslow*, 66 Ill. 219.

The testimony of Pierce as to conversations and correspondence with one Lester was improperly admitted, as there was no proof, except Pierce's statement, that Lester was an agent of defendant; and the character of his agency was not shown, whether general or special. Pierce's testimony as to what Lester said and did, had an important bearing on the determination of the suit. *Ins. Co.* v. *Mahone*, 21 Wall. 152; *Illinois Mutual Fire Ins. Co.* v. *O'Neal*, 13 Ill. 89.

The defendant was entitled to a charge in compliance with its requests. The instructions to the jury were erroneous on all questions referred to in the defendant's exceptions. The court charged as matter of law that plaintiffs might change the use of the building, if they used substantially the same machinery, thus virtually telling the jury that they might disregard the statements in the policy.

*Gilbert A. Davis*, for plaintiffs.

The court correctly charged that, " having reference to this policy as a contract, it is subject in its operation and in its con-

struction to the ordinary rules of law governing contracts." May Ins. s. 172. And the defendants were not prejudiced by any omission in that respect, because under familiar rules of law, the contract will be construed liberally in favor of the insured, so as not to defeat without a plain necessity his claim to the indemnity. May Ins. ss. 174, 175; 2 Parsons Cont. 426, 427.

Defendant was not entitled to a charge that all matters of fact stated in the policy as having been stated by plaintiffs were warranties. The agents who wrote the policy were the agents of defendant, and not of plaintiffs. Gen. Sts. c. 87, s. 4. Defendant cannot avail himself of any neglect or omission of its agents to report to the home office. Facts material to the risk made known to the agents before the policy is issued, are constructively known to the company, and cannot be set up to defeat a recovery on the policy. May Ins. ss. 122, 132, 152; *Plumb* v. *Cattaraugus Mut. Ins. Co.* 18 N. Y. 392; *Ames* v. *N. Y. Union Ins. Co.* 14 N. Y. 253; *Beebe* v. *Hartford Mut. Fire Ins. Co.* 25 Conn. 51; *Hough* v. *City Fire Ins. Co.* 29 Conn. 10.

The company will not be permitted to set up in defeat of a recovery on this policy, that the business was not confined strictly to the manufacture of toys, or that the article manufactured was changed from time to time. The clause, " occupied for the manufacture of toys," even if properly in the policy as expressing the contract of the parties (and this we deny), only referred to, and was a representation of the then present use of the buildings, and was not a warranty of their continued use during the term of the policy. May Ins. s. 247; 2 Parsons Cont. *425; *Catlin* v. *Springfield Ins. Co.* 1 Sumner, 434; *O'Neil* v. *Buffalo Ins. Co.* 3 Comst. 122; *Cumberland Ins. Co.* v. *Douglass*, 58 Penn. St. 419; *Blood* v. *Howard Fire Ins. Co.* 12 Cush. 472; *Boardman* v. *N. H. Mut. Fire Ins. Co.* 20 N. H. 551; *Joyce* v. *Maine Ins. Co.* 45 Me. 168; *Billings* v. *Tolland Co. Mut. Ins. Co.* 20 Conn. 139; *Smith* v. *Mechanics & Traders Fire Ins. Co.* 32 N. Y. 399. Although the policy must be held to express the contract of the parties and cannot be varied by parol evidence, the facts as to the prospective occupancy of the buildings for some kind of manufacturing therein, not then certainly known by Ellis and others,

having been communicated to defendant's agents, before the policy was written, the defendant is estopped from setting up in defence any errors in the terms of the policy. This principle is decisive of the case. May Ins. ss. 144, 145, 497 ; *Campbell* v. *Merchants & Farmers Mut. Ins. Co.* 37 N. H. 35 ; *Plumb* v. *Cattaraugus Co. M. Ins. Co.* 18 N. Y. 392 ; *Rowley* v. *Empire Ins. Co.* 36 N. Y. 550.

And this is true, even though the policy provide that when the application is made through an agent of the company the applicant shall be responsible for such agent's representations. *Miller* v. *Mut. Benefit Life Ins. Co.* 31 Iowa, 216 ; *Rathbone* v. *City Fire Ins. Co.* 31 Conn. 193 ; *Hough* v. *City Fire Ins. Co.* 29 Conn. 10 ; May Ins. s. 143, n. 1 ; *Hartford Protection Ins. Co.* v. *Harmer*, 2 Ohio St. 459 ; *McBride* v. *Republic Fire Ins. Co.* 30 Wis. 562 ; *Aurora Fire Ins. Co.* v. *Eddy*, 55 Ill. 213 ; *Mich. State Ins. Co.* v. *Lewis*, 30 Mich. 41; *American Central Ins. Co.* v. *McLanathan*, 11 Kan. 533 ; *Combs* v. *Hannibal Ins. Co.* 43 Mo. 148 ; *McFarland* v. *Ætna F. & M. Ins. Co.* 6 W. Va. 437 ; *Southern Ins. Co.* v. *Trust Co.* 42 Ga. 587 ; *James River Ins. Co.* v. *Merritt*, 47 Ala. 387 ; *Witherell* v. *Maine Ins. Co.* 49 Me. 200 ; *People's Ins. Co.* v. *Spencer*, 53 Penn. St 353 ; *Union Mut. Ins. Co.* v. *Wilkinson*, 13 Wall. 222.

It is true that the courts of Massachusetts and Rhode Island are more strict, and have refused to yield to the strong equity of the assured under like circumstances, but it is to be noticed that there is no statute in Massachusetts making the agent who takes the application the agent of the company, instead of the assured, as in this state. This court has not directly adjudicated this question, although from the reasoning of BENNETT, J., in *Allen, Spafford & Co.* v. *The Vt. Mut. Fire Ins. Co.* 12 Vt. 366, 372, it seems to be implied that if the agent had knowledge of the fact of the existence of the sizing apparatus that was there material to the risk, it would have operated as a waiver or estoppel. But giving the clause, " occupied for the manufacture of toys," the force claimed by the defendant, still, reading it in connection with the fifth condition of the policy, we insist that plaintiffs are entitled to recover. Manufacture of toys is neither hazardous, extra-

hazardous, nor specially hazardous, according to the classes of hazards on the back of the policy. The kind of toys to be manufactured is not indicated. Hence the toy trunk is within the terms. This clause applies only to a permanent change in the use of the buildings, and the policy is not made void by the mere temporary exercise therein of a hazardous trade or vocation. *Gates* v. *Madison Co. Ins. Co.* 5 N. Y. 469 ; May Ins. s. 241; *Shaw* v. *Robberds*, 6 A. & E. 75 ; *Williams* v. *New England Mut. Fire Ins. Co.* 31 Me. 219 ; *Rice* v. *Tower*, 1 Gray, 426 ; *Dobson* v. *Sotheby*, 1 Moody & M. 90 ; *Billings* v. *Tolland Co. Mutual Fire Ins. Co.* 20 Conn. 138. And under the clause, " manufacture of toys," the plaintiffs had the right to employ, and the policy covered, all processes, practices, subordinate trades, and manufactures necessarily or usually included in and incidental to the general subject-matter of the insurance, notwithstanding the policy provided that, if during the insurance the premises should be used for any trade, business or vocation, denominated extra hazardous or specially hazardous, or if the occupation should be changed from one of the class denominated extra hazardous or specially hazardous to that of another of the same class, without permission, then so long as the premises should be so appropriated, the policy should cease and be of no force. This proposition has been established and illustrated by numerous cases. May Ins. s. 239, and cases cited.

The court properly instructed the jury in respect to the use to which the building might be put, in charging that they " might do their work using substantially the same machinery, with change of detail, adapting it to the purposes designed, and working upon the same kind of material, unless the doing of such work increased the peril by fire." The question whether the change did in fact increase the peril by fire was submitted to the jury, who found that it did not, but greatly decreased it.

One of the provisions of the policy was, that if the premises should be used or occupied so as to increase the risk, the policy should be void. The defence in that respect is purely technical, and not sound law. *Gamwell* v. *Merchants & Farmers Mut. Fire Ins. Co.* 12 Cush. 167 ; *Smith* v. *Mechanics & Traders Fire Ins.*

*Co.* 32 N. Y. 399; *Boardman* v. *Merrimack Mut. Fire Ins. Co.* 8 Cush. 583 ; *Wood* v. *Hartford Fire Ins. Co.* 13 Conn. 533.

Under the fifth condition of the policy, the use of the premises for any trade, business or vocation, denominated extra hazardous or specially hazardous, or the change of occupation from one of the class denominated hazardous or specially hazardous to that of another of the same class, makes the policy void, but void only so long as the same should be so appropriated, applied or used. The exceptions do not show that at the time of the fire any trade, business or vocation denominated extra hazardous or specially hazardous, was carried on. That should affirmatively and clearly appear in order to render the policy void, the jury having negatived any increase of the risk. *New England Fire & Marine Ins. Co.* v. *Wetmore*, 32 Ill. 221 ; *Phœnix Ins. Co.* v. *Lawrence*, 4 Met. (Ky.) 9.

The request for the court to charge that any alteration of the business for purposes other than that specified in the policy, was too general. According to that, even the slightest alteration of the business or a change from the manufacture of toys to the safest kind of occupation, materially diminishing the risk, or the slighest increase in the amount of manufacturing toys, would have invalidated the policy. That request did not direct the attention of the court to the first nor the fifth condition of the policy, and the court was justified in disregarding it. *Rathbone* v. *City Fire Ins. Co.* 31 Conn. 193.

The request to charge that the omission to state every fact material to the risk whether intentional or inadvertent renders the policy void, was complied with except as to the term inadvertent. There was nothing in the facts that made it the duty of the court to instruct the jury as to inadvertence specifically, but the charge was sufficiently broad and comprehensive in that respect to cover every reasonable construction or hypothesis based upon the proofs. "The insured need not," says Lord MANSFIELD, "mention what the underwriter ought to know ; what he takes on himself the knowledge of ; or what he waives being informed of." *Carter* v. *Bœhm*, 3 Burr. 1905.

The testimony of Ellis that the business he was carrying on at

the time of the fire, was not more hazardous than the manufacture of toys, was properly received; because the first condition of the policy provided that if the premises should be occupied or used so as to increase the risk, the policy should be void, and it would be competent for plaintiffs to show that the risk had not been increased; because the buildings having been insured for some kind of a manufacturing establishment, it was competent for plaintiffs to show that the risk had not been increased by any more hazardous occupation than that carried on at the time of the issuing of the policy; and because the testimony had a tendency to support the issue. *Green* v. *Donaldson*, 16 Vt. 162. It was a matter of fact and not of opinion. *Fulsome* v. *Concord*, 46 Vt. 135, 140; *James* v. *Hodsden*, 47 Vt. 127, 136; 28 Vt. 149. And even if improperly admitted, defendant was not injured thereby. *Leonard* v. *Belknap*, 47 Vt. 602. The defendant's objections to the introduction of the original proofs of loss, and the three affidavits, are frivolous. Those proofs and affidavits were required by the conditions of the policy to be made, and should have been proved on trial; but if improperly admitted, the defendant did not suffer in consequence, as they were not read to the jury; and the defendant did not except to any use made of them on the trial.

There was no error in the admission of the testimony of Pierce in reference to the settlement of the loss with Lester, who, as plaintiffs' evidence tended to show, was the agent of defendant, and specially authorized in writing to settle this loss; whereby the testimony became immaterial.

The opinion of the court was delivered by

POWERS, J.   This is an action of assumpsit on a policy of insurance upon certain property of the plaintiffs in Springfield, executed by the defendants on the first day of August, 1874, for the term of one year.   The policy was written by the defendant's agents, Johnson & Babbitt, and the property insured subsequently, and during the currency of the policy, was destroyed by fire.   No formal written application for the insurance was made by the plaintiffs; but the agents visited the premises, and from repre-

sentatious made by the plaintiffs on that occasion, and such examination and observation as the agents themselves made, the policy was executed.  The case does not disclose that the plaintiffs made any false representations on that or any other occasion, touching the condition of the property or its present or prospective uses, that are material to this inquiry ; but on the contrary, the agents seem to have acted upon their own personal knowledge of all facts material to be known concerning the risk.  Much of the discussion, then, that has taken place during the argument, touching the doctrines of warranty and false representation, which mainly apply to those preliminary steps which lead to the execution of the policy, has little application to this case, in view of the verdict found by the jury.

The main defence made to the action is based upon the claim that the assured subjected the property to a different use after the execution of the policy than the one named in the policy itself, in violation, as the defendant alleges, of the 1st and 5th conditions of the policy.  The language of the 1st condition, so far as it bears upon this question, is as follows : " Or if the above mentioned premises shall be occupied or used so as to increase the risk, * * * or the risk be increased * * * by any means whatever within the control of the assured, without the assent of the company indorsed hereon, this policy shall be void " ; and the clause in the 5th condition relied upon reads : " Or if the occupation of such premises be changed from one of the class denominated extra hazardous or specially hazardous, to that of another of the same class, except as herein specially agreed to in writing upon this policy, then, so long as the same shall be so appropriated, this policy shall cease and be of no force."  On the back of the policy are printed three " classes of hazards," denominated " hazardous," " extra hazardous," and " specially hazardous " ; and almost every possible use or occupation to which buildings could be subjected, are specified in one or the other of these classes.

The premises in question are described in the policy as a " new frame manufacturing building and ells and office attached, with fixed and movable machinery therein, situate in Springfield, and

*occupied for the manufacture of toys.*" In looking at the classes of hazards on the back of the policy, there is no mention made of this kind of manufactory, and it must, obviously, fall within the general clause written at the foot of the specially hazardous class. This clause includes " all workshops, mills, and manufacturing establishments " not enumerated in the two preceding classes. The " specially hazardous " class is the most hazardous class specified. The company, then, must in the first instance have graduated their premium upon full notice that they were assuming the highest grade of risk and responsibility in placing this insurance.

The defendant insists that the subsequent use of the property for the manufacture of toy trunks, small nursery chairs, berry and market baskets, table mats, chair stretchers, and mop handles, was a " change of the occupation from one of the class denominated specially hazardous to that of another," or, to be more exact, to that of several others.

The evident scope of this clause of the fifth condition is, to prohibit a change of the occupation of the premises as a manufacturing establishment for the manufacture of toys, to an establishment for the manufacture of other kinds of goods enumerated in the same class. There is no mention made in this class, or in either of the others, of any manufacturing business that would include the articles relied upon as indicating a change of business. The " class " in question specifies every conceivable kind of manufactures, but says nothing of small nursery chairs, table mats, &c. Now a change of occupation in the sense of this 5th condition, must be a substantial substitution of one distinct and specially defined kind of manufacturing for that of another equally distinct and defined kind of business ; as, a change from a " coach-maker's shop " to a " cotton-mill," or a "gristmill " to a " rolling-mill," and innumerable other illustrations that may be made from the large number of specified kinds of manufacturing establishments enumerated in this class.

The making of a single article that in a strict sense is not a toy, is not prohibited by the language of the condition in question, unless it amounts to a substantial change in the business. The

turning of " chair stretchers," a single piece among the great number of pieces that go to make a chair, is not a conversion of the business into a chair manufactory. The words " chair manufactory," convey to the ordinary mind the idea of a certain occupation, a business comprehending the processes, machinery, tools, material, and workmanship used and employed in making chairs.

Again, it could not be said of the proprietors of a chair manufactory, if in the course of their business as chair makers they should manufacture some small wooden toy, that they had changed their business,—that they had abandoned one kind of manufacturing and converted their premises into another manufacturing establishment. Notwithstanding such incidental use of their machinery and workmen, their establishment is still a chair manufactory.

It is a fundamental rule in the law of insurance, that the policy shall be construed most strongly against the insurer, and liberally in favor of the assured. The policy is written by the insurers. They use their own language, and surround and barricade their liability under it with such defences as they choose to adopt. Oftentimes their policies, instead of being simple, intelligible instruments that the average holder can understand and construe, are burdened with a great number of technical stipulations and conditions, buried under ingenious phraseology that reflects great credit upon the draughtsman, but leaves " plain people " to learn its true import after their property is destroyed. Then they are informed that the policy is a mere technical notice of special matter to be given in evidence in answer to their claim for damages. There is obvious reason for the rule of liberal construction in favor of the man whose legal rights are to be extracted from such a labyrinth of mysticism.

The business of this manufactory was not substantially changed during the currency of this policy, and the new business done then was incidental to the general business done when the insurance was effected. We think the " change of occupation " from " one of the class " to another " of the class " of hazards which this clause of the 5th condition refers to, is a permanent abandonment of the old business, and the adoption of a new business of like hazardous risk. This answers the only purpose the insurer

could desire to subserve in requiring notice, that he may determine whether to accept such new risk or not. This construction is abundantly fortified by authority.. *Dobson* v. *Sotheby*, 22 E. C. L. 481 ; *Shaw* v. *Robberds*, 6 A. & E. 75 ; *Burrett* v. *Jermy*, 3 Welsby, H. & G. 535 ; May Ins. s. 241.

The verdict has settled the question that this alleged change of business did not increase the exposure to fire, and hence it was no violation of the clause of the 1st condition quoted above, and relied upon by the defendant as a bar to this action.

But it is said that there was a saw-mill, two planers, and .a blacksmith's forge on the premises ; that these were used without notice to the company, and that this use *ipso facto* vitiated the policy. The case shows that the forge was not used at all during the policy. It is not apparent how the insurers have cause of complaint from this source. As to the saw-mill and planers, the exceptions state that the saw-mill was " used to some extent for the manufacture of lumber for making toys, and to a very small extent for custom sawing," and that the planer was " used only for the planing of lumber for use in the manufacture of toys, except for two small jobs of planing for the accommodation of a neighbor." It is clear that this machinery was employed mainly in the identical business mentioned in the policy, namely, the manufacture of toys ; and the very limited use for other purposes, worked no harm to the defendant, and does not operate to vitiate the policy. May Ins. *supra*. .

Moreover, Johnson & Babbit had fully examined the premises, and knew that custom sawing at the saw-mill, custom planing with the planer, and the turning of mop-handles in the lathes, had for some years been done there, and that the machinery named in the policy was adapted to and had been used for such purposes. The case shows that these agents in placing this insurance acted upon their own personal acquaintance with the business in past years, and what they observed and learned when on the premises just before writing the policy ; all which matters and things so learned and so observed, operated as full notice of all facts material to be known touching the manufacture of mop-handles, and the occasional use of the saw-mill and planer for custom work ;

and notice to these general agents was notice to the defendant. And notice so given is just as effectual for all purposes of this inquiry as it would be if given after the execution of the policy. By executing the policy with full knowledge of these facts, the company is estopped from setting up any defence predicated upon the plaintiff's omission to give them formal notice of these facts.

Objection is made that the testimony of Ellis was improperly admitted. The general rule that a witness shall not be allowed to give his opinion upon controverted facts, is subject to some exceptions. In *Dean* v. *McLean*, 48 Vt. 412, the plaintiff sought to recover damages from the negligent floating of logs and timber through his mill-dam, flume, and bulkhead by the defendant. On the trial the plaintiff, who was familiar with the running of logs, was asked what would have been a proper way to open the bulkhead and run the logs through. The question called for his opinion, but this court held it proper. BARRETT, J., in giving the opinion, says: "The running of the logs in that stream and through that bulkhead. was not a matter of common knowledge nor of adequate common judgment upon the facts shown by other evidence. The experience and observation of the plaintiff, gave him the grounds and faculty of an opinion peculiar to himself, and not common to men who had no such experience or observation." Now Ellis had charge of all the business carried on in this manufactory, and had special opportunity to know and did know all the details and processes of the manufacture of these goods, and the liability to fire, and as to these facts within his peculiar knowledge, he was a competent witness.

It is further objected that Peirce was improperly allowed to testify to the declarations of Lester. Evidence was given to show that Lester was an agent of the defendant, specially authorized in writing to settle this loss. His declarations in the course of the discharge of such duty, might properly be shown in evidence. This proposition is too elementary to require the citation of authority.

The defendant's requests to charge, so far as they were material to the law and facts of the case, were properly disposed of in the charge as given.

Many other questions were discussed by counsel on both sides in the very able arguments which they submitted, but the disposal of the main questions in the case makes further discussion unnecessary.

Judgment affirmed.