TRIPP & BAILEY, ADM'RS. *v.* THE VERMONT LIFE INSUR-
ANCE CO.

*Life Insurance.* ' *Action in Name of Administrator.    Waiver.
Tender.*

1. The engagement of the company was : " And the said company do hereby *prom-
   ise to, and agree with, the insured,* his executors, administrators, or assigns, well
   and truly to pay" *to the insured, &c. Held,* that the action to recover the
   amount of the p dicy could be maintained in the name of the intestate's admin-
   istrators.
2. *Davenport, Admr.* v. *M. L. Association,* 47 Vt. 528, distinguished.
3. I: is not necessary to set out in *hæc verba* in the declaration the several conditions
   in the policy, and then al ege performance; or, to prove that the insured did not
   die in a due', or, whi'e employed cn a railroad, &c.
4. The defendant by its dea ings with the intesta'e in accepting payment on the pre-
   miums long after they were due, and by other acts, waived the condition in the
   policy, by which a fai'ure to pay the premiums as soon as due shou'd work a
   forfeiture.
5. No tender of the last premium was necessary.

ASSUMPSIT with general and special counts to recover upon a
contract of life insurance. Plea, general issue, and trial by jury,
September Term, 1879, Washington County, REDFIELD, J., pre-
siding. The policy was dated July 24th, 1875. The intestate
died on the 4th day of January, 1878. The second count, among
other facts, alleged :

" That all the statements and declarations made to said com-
pany in said application, to wit, on said 24th day of July, A. D.
1875, to wit, at Burlington aforesaid, were true ; that the said
George R. Chapman during his lifetime, to wit, at Burlington
aforesaid, paid to said company all sums of money required to be
paid to said company by the terms of said policy at the times and
in the manner required by said company ; that the payment of the
sum of money or premium due on the 24th day of July, A. D.
1877, was, to wit, on said 24th day of July, A. D., 1877, to wit,
at Burlington aforesaid, not required by said company to be paid
to said company by said George R. Chapman at the time named
in said policy for the payment of the same, and the payment of
the same at the time and in the manner named in said policy was

then and there waived by said company; that the said George R. Chapman, during his lifetime, to wit, at Burlington aforesaid, performed and kept all and singular, the agreements and conditions on his part to be performed and kept."

The policy contained the following:

" And the company do hereby promise to, and agree with, the insured, his executors, administrators or assigns, well and truly to pay, at their office, the said sum insured, to the said George R. Chapman, or his assigns, on the 24th day of July, in the year 1913, or should the said person whose life is hereby insured as above, die before, then in ninety days after due notice and proof of the death of the said George R. Chapman during the continuance and before the termination of this policy, to his mother, Clara M. Chapman,—the balance of the year's premium being first deducted therefrom."

The premium was semi-annual, payable on the 24th days of January and July, of each year. Said Chapman was also an agent of the company. Mr. Gibbs, the secretary of the company, admitted on cross-examination, that the first premium falling due January 24th, 1876, was paid June 21st, 1876; that the premium which was to be paid when the policy issued in July was not paid till the next December; that both premiums of July, 1876, and January, 1877, were paid June 20th, 1877; that the said Chapman owned another policy in the same company, and that the company had paid it; and that he paid the premiums on that policy, sometimes in six, sometimes in nine, months, and one time, " almost a year," after they were due.

As to the premiums falling due July, 1877, Gibbs wrote Chapman as follows:

SEPTEMBER 6th, 1877.

" SIR : Herewith please receive for collection the following renewals for the month of July, 1877 :

No. 140, due July 23, life insured. Geo. R. Chapman. Premium, $9.72; dividend $5.21; payment, $4.51.

No. 986, due July 24; life insured, Geo. R. Chapman. Premium, $21.22 ; dividend, —— —— ; payment, $21.22.

These should have gone forward before, but as you were away on your wedding trip, did not do it at the time, and have overlooked these renewals since."

The following is a part of the testimony of Mr. Gibbs :

Q. This first premium after the policy issued, this premium due January 24, '76, was paid June 21st, '76 ? A. Yes, the second semi-annual premium.

Q. That was paid about six months after it was due? A. Well, from January to June, nearly five months.

Q. The next payment due July 24, '76, was paid about a year after? A. Yes. Mr. Roberts—ten months and twenty-six days.

Q. The third payment, due Jan. 24, '77, was paid June 19, '77? A. No, paid at the same time, June 20th.

Q. That was paid the June after it was due? A. Yes, sir.

Q. Mr. Chapman had another policy in your company, didn't he, that has since been paid? A. Yes.

Q. What was the amount of that policy? A. $1000.

Q. Wasn't it the practice of the company to defer the collection of the premiums on their policies just as they had on this one? A. No, sir; he took his chances; he never had any liberty to do it. We accepted the money when it came. The other policy was treated precisely like this.

Q. That is, the premiums were paid upon it along from time to time? A. Yes, sir.

Q. You didn't require that payments should be made upon it when they were due? A. No, sir. We required, as the instruction will show, that he should make his report, the business done in one month, the next month. The instructions will show that all the way through.

Q. He didn't do it, did he? A. Not along to the last, he didn't.

. . . . . . . . . . .

A. This policy was a quarterly premium policy. The premium of July 24, was paid in his report of Dec. 4, of the same year.

Q. The December after? A. The December after. The one for October was paid Dec. 31.

Q. When was the next premium due paid? A. The one for January 23, was paid June 13, '76.

Q. When was the next payment due paid? A. April was paid Oct. 2d, '76, due April 23.

Q. When was the next payment paid? A. The next one would be July, that wasn't paid till June 20, '77.

Q. Almost a year? A. Yes.

Q. When was the next premium due, paid? A. It was paid the same time.

Q. When was it due? A. Oct. 23, paid June 20, '77.

Q. About nine months after? A. Yes.

Q. When was the next premium due and when paid? A. It was the January premium, and paid June 20, 1877, due Jan. 23.

Q. About six months after? A. Yes, and that was the last on that policy. No premium received after Jan. 23, 1877.

Q. Wasn't it your custom to permit the policy holders in Mr. Chapman's agency to make payments of their premium after the policies had lapsed by their terms? A. No, I can't tell when Mr. Chapman received the money from a single policy holder. I could'nt tell without corresponding with them. I never did it.

Q. Didn't you know, as secretary of the company, that the policy holders didn't pay their premiums when they were due on most of the policies? A. I knew he said so sometimes.

Q. Didn't you know it from his representations to the company? A. I knew so from him.

The court charged the jury, in part:

"The case must rather stand upon an agreement to let this run, to give credit, to postpone the time of payment. Now, was there such an agreement? There was no negotiation for a special agreement, but the case is submitted to you; if, upon the intercourse, the business communications, the business relations between the defendant and Chapman, who was an agent of theirs at Vergennes, he had a right to believe the defendant had given him to understand, and he had a right to understand from what they had written to him, in their manner of deal with him, that this premium of July 24th, 1877, might be paid at any future time, or at some future time long enough to cover the term of his life, which was in this case the 4th of January, 1878; and we require you to find that that agreement, that the conduct, declarations, letters, manner of dealings gave this insured to understand, and, as a business man, he did understand, that the company agreed to waive that payment beyond or up to the 4th of January, 1878, notwithstanding there should intervene occurrences materially affecting the risks, such as sickness, the indications of a speedy death, and, notwithstanding that death should occur; that such an agreement was absolute in its character, and notwithstanding intervening occurrences however affecting this risk, he had a right to understand, and did understand, that this company agreed to keep this policy in force against such contingencies without the payment of the premium.       .       .       .       .       .       .

Well, now this inquiry comes down substantially to this: Did the company agree, or give Chapman in this case, to understand that whether he complied with the terms of the policy as to the payment of the premium or not, that notwithstanding it might be delayed and he become sick, and in such condition that the company would not take a policy on his life, still he did understand and had a right to understand, notwithstanding such an occurrence as that the company would stand in and keep this policy alive and pay this $2,000 at his death?

I am unable to state to you what appears on the books, particularly what appears in these letters, but I think it may be assumed that in many cases through their agencies the company has taken the premium voluntarily, and thus renewed the policy when, by its terms it had come to an end. And it is shown to you by the secretary that the insured being substantially what he was before, it is for the interest of the company, and they would, in any case within a reasonable time, the insured being in health, revive the policy, because it is easier and better than it is to get a new one; but the plaintiff claims that this had been so universal that the in-

sured in this case had a right to understand, and did understand that there was no need of his hastening to Burlington and seeing that that premium was paid the company, and given him assurance by the manner of deal and by the manner of correspondence; by all these circumstances they had given him assurance that if evil befel him, he lost his health, if a fatal sickness came upon him, there was no need of paying the premium at present; the company had stood in such relation with him that they would carry this policy alike for his protection.

Now, if you find that true by a fair balance of testimony after weighing all these circumstances, that the defendant corporation came into such an arrangement and agreement, then we think they should abide by it; they should pay, if they agreed to pay; if the defendant company gave him fairly and justly to understand, ' we shall carry your policy and keep it alive when by its terms it has been ended,' when the period covered as in this case, was the life of Mr. Chapman, and there was such an absolute understanding that notwithstanding the intervening sickness, fatal sickness, still they must keep it alive and pay it; if you find that there was such an agreement, then the defendant should stand to it."

The court submitted the following question to the jury:

" Did the defendant in this case agree with the insured to waive the payment of the premium that became due July 24th, 1877; or, agree to postpone its payment, either indefinitely or for a period covering the lifetime of the insured, notwithstanding intervening occurrences affecting the risk, as in this case, sickness and death of the insured " ?

The jury gave an affirmative answer; and also returned a general verdict for the plaintiffs.

*R. S. Taft* and *Roberts & Roberts*, for defendant.

The suit is not maintainable in the name of these plaintiffs. It should have been brought in the name of Clara M. Chapman, the beneficiary.

The Vermont cases are: *Fugure* v. *Mutual Society*, 46 Vt. 362; *Davenport* v. *Mutual Life Ass'n*, 47 Vt. 528; *Fairchild* v. *N. E. Mutual Life Ass'n*, 51 Vt. 613. These leave the question undecided. See further: Bliss Life Ins. ss. 317, 318, 320; *Hoyle* v. *Guardian Life Ins. Co.*, 6 Robertson, 567; *Ruppart* v. *Union Mut. Ins. Co.*, 7 Robertson, 155; *Myers* v. *Keystone Mut. Life Ins. Co.*, 27 Penn. 26; In re *Kugler*, 3 Big. Life Ins. Rep. 592.

There was a variance between the contract declared upon and the contract produced in evidence. They were not legally identical.

Good pleading required the statement of these conditions, and performance of the same, in order to a recovery. 1 Ch. Pl. 309, 310, p. 338–340; *Kimball* v. *Rut. & Bur. R. Co.*, 26 Vt. 247; *Mann* v. *Birchard*, 40 Vt. 326; *Patch Ins. Co.*, 44 Vt. 481; *Woodstock Bank* v. *Downer*, 27 Vt. 482; 36 Vt. 172; Rob. Dig. 737.

If the waiver spoken of could be tortured into an agreement such as is claimed, it was necessary that it should be set out in the declaration in its scope, details, consideration, etc. Ch. Pl. 358.

As to a parol waiver of performance of the conditions of a written contract, or change in it, a distinction is taken between cases where the waiver or modification is used as matter of defence, and where used as a ground of action. *Porter* v. *Stewart*, 2 Aik. 417; *Lawrence* v. *Dole*, 11 Vt. 549; *Dana* v. *Hancock*, 30 Vt. 616, 620; *Sherwin* v. *Rut. & Bur. R. Co.*, 24 Vt. 347; *Flanders* v. *Fay*, 40 Vt. 316; *Hydeville Co.* v. *Eagle R. Co.*, 44 Vt. 395, 403.

There was no waiver. May Ins. 346, 35 ', 357; *Franklin Ins. Co.* v. *Sefton*, 53 Ind. 380; *Want* v. *Blunt*, 12 East. 183, (2 Big. Ins. Rep. 201); *Tarleton* v. *Staniworth*, 5 T. R. 649; *Mut. Ben. L. Ins. Co.* v. *Ruse*, 8 Ga. 534, (Bliss' Life Ins. s. 197); *Ruse* v. *Mut. Ben. L. Ins. Co.*, 23 N. Y. 516; *Simpson* v. *Ins. Co.*, 88 E. C. L. 256; (2 Big. Ins. Rep. 497); *Pritchard* v. *Life Ins. Co.*, 3 C. B. (N. S.) 622, 91 E. C. L. 619; (2 Big. Ins. Rep. 544); Bliss Life Ins. ss. 196, 200; *Thompson* v. *Knickerbocker Life Ins. Co.*, 5 Big. Ins. Rep. 8.

There was no consideration for the supposed agreement to extend the time of payment. May Ins. 362; *Edge* v. *Duke*, 18 L. J. Ch. 183; *Few* v. *Perkins*, L. R. 2 Exch. 92; *Patchin* v. *Lamborn*, 31 Penn. St. 314.


*Charles W. Porter*, for plaintiffs.

The action was properly brought in the name of the administrators. *Pangborn* v. *Saxton*, 11 Vt. 79; *Hall* v. *Huntoon*, 17 Vt. 234; *Corry* v. *Powers*, 18 Vt. 587; *Phelps et al.* v. *Conant*,

30 Vt. 283 ; *Fugure* v. *Mutual Society*, 46 Vt. 362 ; *Davenport* v. *Insurance Co.*, 47 Vt. 528.

This is the general rule. 1 Chit. Pl. 416 ; *Mullen* v. *Whipple*, 1 Gray, 321 ; *Carr* v. *Bank*, 107 Mass. 45 ; *Colboone* v. *Phillips*, 13 Gray, 6 ?, 66 ; *Bailey* v. *Ins. Co.*, 114 Mass. 177.

The declaration set out all that was necessary. May Ins. s. 589 ; Chit. Pl. (16 Am. Ed.) 329, 705 ; *Newton* v. *Brown*, 49 Vt. 18 ; *Gates* v. *Bowker*, 18 Vt. 23. There was a waiver. May Ins. ss. 361, 363 ; *Hanley* v. *Life Association*, 69 Mo. 380 ; *Insurance Co.* v. *Doster*, U. S. Supreme Ct., Oct., 1882 ; *Life Ins. Co.* v. *Warner*, 80 Ill. 411 ; *Dilleber Ins. Co.*, 76 N. Y. 567 ; *Young* v. *Ins. Co.*, 4 Big. Life Ins. Cases, 5 ; *McCraw* v. *Ins. Co.*, 78 N. C. 149 ; *Thompson* v. *Ins. Co.*, 4 Big. Ins. Cases, 165. The waiver need not be founded on a new consideration. 77 N. Y. 483 ; 26 Iowa, 483.

The opinion of the court was delivered by

Powers, J. I. It is insisted that the action was improperly brought in the name of Chapman's administrators.

In the case of *Davenport, Adm'r of Twombly,* v. *N. E. Mut. Life Association*, 47 Vt. 528, which was an action of assumpsit upon a policy of life insurance, it was held that the action was improperly brought in the name of the administrator. But an examination of that case will show that the decision was based upon the averment in the special count that the defendant " undertook and then and there faithfully promised to pay to the wife and children, or their legal representatives, &c." To this count there was a demurrer ; and in accordance with the rule that on demurrer pleadings will not be helped out by inferences, the court held that the promise alleged was express to the wife and children and no promise to the intestate, whom the plaintiff represented, was to be inferred. In the case at bar the engagement of the company is expressed as follows : " And the said company do hereby *promise to,* and *agree with*, the *insured*, his executors, administrators or assigns, to pay, &c.,  . . . . . (and in case of his death before A. D. 1913), to pay his mother, Clara M. Chapman, &c."

Here it is seen the contract is made with Chapman ; the consid-

eration moved from him; the promise moved *to* him, and the action is for the breach of this promise. Clara M. Chapman is in a contingency the *beneficiary* of the contract, but is not a *party* to it. The *promise* upon which the obligation of the defendant to pay, *rests*, was made to the intestate, and his representatives alone can enforce it.

II. It is further claimed that there was a variance between the declaration and the evidence offered in support of it. This objection went upon the ground that the several conditions embodied in the policy were not set out in the count, and compliance with their terms, by the insured averred—except as to the fourth condition, the count alleges " that the said George R. Chapman during his lifetime, to wit, at Burlington aforesaid, performed and kept all and singular the agreements and conditions on his part to be performed and kept." It would be useless to set out the conditions *in haec verba* and then proceed with proper language to allege performance of the same. To entitle the plaintiffs to recover, it is not necessary to make proof that the insured did not die in a duel, or while employed on a railroad, or while engaged in any of the various hazardous employments specified in the conditions of his policy. Why then necessary to aver such facts? The most elaborate and detailed recital of the conditions with the fullest and most technical allegation of compliance therewith, amount to nothing more than a statement that the insured has kept and performed his agreement.

As to the fourth condition, the count avers a waiver of the payment of the premium due July 24th, 1877. The policy makes the payment of the premium on the day named a condition precedent to the further continuance of the contract. If the plaintiffs had offered the policy alone in evidence it is clear that there would be a variance between the count and the evidence. But the plaintiffs supplemented the evidence afforded by the policy by proof that compliance with the fourth condition had been waived by the company and thus the proofs accorded with the allegations in this respect.

If a written contract has been varied in its terms by the par-

ties, the new or varied contract is the one upon which suit is to be brought; and if one of the parties thereto has been excused from the performance of a condition imposed by the contract upon him, this excuse should be set forth in the declaration, if the party expects to offer proof of it on trial.

III. Finding no difficulty with the question of pleading raised, we come to the more substantial and doubtful question whether the evidence disclosed a waiver of the fourth condition, so far as the same required the payment of the current premiums as they matured.

The language of this condition is, " in case the premium shall not be paid to said company, on or before the time herein mentioned for the payment of the same, then and in every such case . . . this policy shall cease and determine."

There is much conflict in the authorities upon this question of waiver; but the trend of the decisions is in the direction of upholding the contract in cases where the insurers by this course of dealing with the insured have given him the right to understand that a strict compliance with the language of the condition requiring payment of his premiums on the day fixed, would not be exacted. The requirement of such payment is inserted in the contract for the benefit of the insurers, and is voidable at their election. If they see fit to waive the condition, the policy continues obligatory upon them on its original terms. The evidence tended to show that not only respecting the policy in question but respecting another policy held by Chapman and others procured through his agency, the company had in many instances, accepted premiums overdue for periods ranging from five months to nearly a year. In these instances the company had the right to declare the policies forfeited, but had elected to treat them as on foot and to collect the premiums as soon as they could. This evidence with other kindred facts shown, fully warranted the court in submitting to the jury to determine whether the company, by its course of dealing, had given Chapman to understand that the fourth condition of his policy would not be insisted upon, and whether he would have indulgence respecting his payments.

The special question submitted, examined in connection with the charge of the court, is not objectionable in form. If the indulgence granted to Chapman was indefinite as to time and was granted under such circumstances as to estop the company from now repudiating it, it had all the force of an agreement for delay. The scope of the question could not have been misapprehended by the jury in view of the instructions given them. The jury was in substance told that to warrant a recovery the indulgence must have been granted in duration, long enough to cover Chapman's life, and absolute enough in character to cover intervening occurrences affecting the risk — as for instance — sickness and death. But the general verdict for the plaintiff rests upon the same basis as the special one; the latter, therefore, was unnecessary.

The company insists and has insisted since Chapman's death that the policy lapsed July 24th, 1877, by the non-payment of the premium then due. It is not apparent how a tender of that premium by the administrators would affect their right of recovery under such circumstances. The policy provides that the sum payable is to be redeemed by any balance of unpaid premiums for the year. Some other points were made in argument, but the views herein expressed render discussion of them unncessary.

The decision herein announced is the conclusion of the majority of the court. Judgment affirmed.