Stiness, J.
(1) The plaintiff sues to recover on a policy of insurance payable to her on the life of her daughter, dated March 22, 1890, the terms of which required the payment in advance of a certain sum, or of one dollar on the 15th day of each month for twenty years, at the option of the plaintiff, who chose the latter mode. The application was dated March 18, 1890, at which time the first payment was made, and so on until December 15, 1891, when the last payment was made. The insured died January 28, 1892. The defence is that the policy had lapsed by non-payment of premium. The jury gave a verdict for the defendant, and the plaintiff petitions for new trial. The plaintiff contends that the policy had not lapsed, because the payments being due on the 15th of each month, the first payment was not due until April 15, 1890, and so the payment made in December, 1891, was not due until January 15, 1892, and another would not be due until February 15, 1892, thus leaving the policy in force at the timé of the death.
We do not think that the policy can be so construed. Payment being required in advance, the payment made at its issue would go until the next pay day should come. The fact that this would be three days less than a month does not affect the case, since payments, being parts of a fixed total, were not payments for a month but payments due on a particular day of a month.
*151 The policy lapsed, therefore, and cannot be sustained,on the ground that the premiums had been paid as required by the policy.
(4) Only one exception was taken by the plaintiff. Referring to a second call made by a collecting agent, two or three days before the insured died, the plaintiff showed that a girl answered the bell, and the question was asked, ‘ what did he say to you ? ” The answer was excluded and exception taken. But later on, without objection so far as the record shows, the witness answered : “I told him she was sick in bed. He went away and said he would call again.”
As the plaintiff had the benefit of the testimony, the exception falls. Indeed, the answer is one of the grounds on which she relies in this petition, and it is before us as a part of the record.
(1) A claim is made that other premiums had been received after the 15th, and hence the defendant had led the plaintiff to believe that it would not be exacting as to the day of payment. It is true that payment had been so received, but each receipt had in it this clause : "It being understood and accepted as a condition by the member that if this payment is made after the regular time allowed for payment in the Policy has expired, the Policy was not in force from the date when the amount received was duej until the date of this receipt, and the Association is' not responsible for any claim that may arise under the Policy during said time, and the above amount is accepted and the Policy reinstated only on the' express condition that the member is alive and in sound mind and body and in good health and of'temperate habits at the date of this receipt.”
The plaintiff, therefore, had notice that the company claimed the right to treat the policy as lapsed, for non-payment of premium on the day named. Of course it could reinstate the policy by accepting the premium on the conditions named, but otherwise the contract would not be performed by the plaintiff.
But the plaintiff urges that the agent to collect the premiums represented the company and had authority to waive *152 the condition of payment on the day named, and to extend it, which she claims that he did by saying that he would call again.
In support of this position the case of Heaton v. Manhattan Co., 7 R. I. 502, is relied on, in which the court said that the company may waive a condition in its policy and that, if the insured is allowed to act upon the confidence of such waiver, the company is estopped to deny the fulfillment of the condition. The waiver in that case was by the act °of an agent, but the opinion shows that no question was raised before the jury as to the agent’s authority, which makes it a very different case from this one. There can be no question as to the correctness of the proposition of the court, but it has no application to this case unless we can find that the agent had authority to act for the company in the extension of time. The same proposition was held in Milkman v. United Ins. Co., 20 R. I. 10.
(2) The next step in plaintiff’s argument is that, under Mowry v. Home Ins. Co., 9 R. I. 346, the agent had such authority. The ruling sustained in the case was this : “That if Shepley was the regular agent of the company in this State, then he had (in the absence of evidence to the contrary) full authority to act for the company, and that any limitation on this authority must be brought home to the knowledge of the plaintiff. ” In this case it appears that the collectors were not the “regular” or general agents of the company, authorized to represent it in this State, and that they had no authority to bind the company by a waiver. It also appears that the plaintiff had notice of this fact, in her receipt for premiums, not only in the clause already quoted but also in a notice printed on the receipt that it was “not valid unless countersigned by manager of this association at Providence, E. I.”
In Wilson v. Conway Co., 4 R. I. 141, it was held that an agent, empowered merely to receive applications and to transmit them to the company, to receive the policy and to issue it to the applicant on payment of the premium, is not the agent of the company ; and this decision was adhered to in Reed v. Equitable Ins. Co., 17 R. I. 785, although it was *153 admitted to be contrary to the current of recent authority, upon the ground that it had become a long established rule in this State. The presumptive authority of a collector is much slighter than that of one to receive applications for insurance and to deliver the policy. We think no authority is to be presumed in the collector as a matter of law. Upon the facts it is clear that there was no waiver, The collector testified that he called at the house on the 14th or 15th of January, 1892, the day before or the day the premium was due, but he did not get the money. The plaintiff states the same thing in a letter to the company, in which she says : “ I write to ask a great favor of you and to explain why my daughter neglected to pay the last dues on her insurance. When the agent called on the 15th of January she did not have the money ; the next time he called she had gone out to get it, but was not able to go down to the branch office as she was taken suddenly ill.”
(3) The evidence, therefore, shows that at the first call there was a simple default. There was no promise to delay payment, and, consequently, no reliance upon a promise as a reason for non-payment. The most that can be claimed is that previous payments had been received after they were due ; but as to these there was notice that the policy had lapsed and that its reinstatement was a matter of grace and not of right. Much stress is laid upon a card which was used for a few receipts in 1890, with these words : “Always have your dues ready, so as not to detain the agent, for he has many calls to make and cannot afford to call more than once.” But this notice has no suggestion that another call will be made after the day of payment, and it is followed by this caution : “If possible keep a few months paid ahead ; then you will be on the safe side.” Here is a plain intimation that one would not be “ on the safe side” who was not ready for payment when it was due. The notice is entirely consistent with a second call within the time. The policy having lapsed on January 15th, the question is whether the subsequent call of the agent and his promise to call again amounts to a waiver or an estoppel. We do not think it does. Up *154 to this point the plaintiff had neither been led to do or to refrain from doing anything in regard to the payment, by any word or act of the company or its agent, and as to receiving previous payments after the time there was an express notice of the consequences. The company had done all it could be required to do by the policy, if not more. The act of the agent was not only purely gratuitous, but it does not appear that the payment was ready then or afterwards. Under these circumstances the verdict must have been for the defendant.
The plaintiff claims that the custom of the company, as shown in previous payments, was a waiver of the time of payment, citing the following cases: Meyer v. Knickerbocker Co., 51 How. Pr. (N. Y.) 263, in which it appeared that dividends were allowed to be applied in reduction of premiums, upon a statement from the company. Application for such a statement was seasonably made, but was not given, as it had been for a series of years, and as was necessary in order to inform the insured how much he was required to pay. This had been agreed to by both parties. The plaintiff lived in Buffalo, N. Y., and the defendant was located in the city of New York. Its local agent had been withdrawn from Buffalo shortly before the time of payment, so that the plaintiff was obliged to correspond with the officers of the company. Receiving no reply for about three months, when the defendant notified her that the policy was cancelled for nonpayment of premium, the court held that the policy was not forfeited because the company had failed to comply with its admitted agreement and brought about the failure to pay by its own disregard of duty.
In Buckbee v. U. S. Ins. Co., 18 Barb. 541; Cotton Ins. Co. v. Lester, 62 Ga. 247; and Western Co. v. Scheidle, 18 Neb. 495, the company had received the money without insisting upon a forfeiture, and hence it was held that its right to claim a forfeiture was waived. These cases, therefore, are not in point.
Tripp v. Vermont Ins. Co., 55 Vt. 100; and Thompson v. St. Louis Co., 52 Mo. 469, hold that the habit of receiving *155 premiums after they are due may amount to a waiver, and that this is a question of fact for a jury. In this they agree with Davis v. Western Co., 8 R. I. 277.
Jacob W. Mathewson and George T. Brown, for plaintiff.
Charles E. Salisbury, for defendant.
As a question of fact, however, in view of the notice by the company ; of the knowledge by the plaintiff, as shown in her letter, that payment was required on the 15th: of her understanding that, on this account, she had no right, but asked the favor of payment; and of the lack of anything to show that she had been misled by the company, we do not see how the jury could have done otherwise than to have given their verdict, as they did, for the defendant. One of the plaintiff’s witnesses testifies that she went to the office of the general agent for a proof of death, who said: “She hadn’t paid the last payment. I said, ‘it will be paid.’ He said then, if she hadn’t paid it I could take it out of the death notice ; he made it out. He says, ‘ She has paid all the payments?’ I says, ‘Yes, sir ; you have got it on your books, haven’t you ? ’ He showed it to me. He made out the death notice and gave it to me on condition that I would pay the other dollar.”
It is difficult to understand from this testimony whether the agent was acting upon the statement of the witness that all the payments had been made, or whether he gave the paper with the promise that the claim should be paid on condition that she would pay the dollar. Taking the latter view, as most favorable to the plaintiff, it does not appear that the dollar has been paid or tendered, and hence the jury could not have found for the plaintiff on this ground, even if it were tenable in other inspects.
We think that the verdict was not against the evidence, and the petition for a new trial is denied.