LAWRENCE BRAINERD AND OTHERS v. PECK & COLBY.

- [IN . CHANCERY.]

*Construction of Railroad Mortgage as to subsequently . acquired property. Description.*

The first mortgage of the Vermont Central Railroad and its appurtenances in the description of a portion of the property conveyed, contained the following words : " And all other personal property belonging to said company, as the same now is in use by said company, or as the same may be hereafter changed or renewed by said company :

*Held,* that these words did not embrace certain machinery for *"burnetizing"* ties and timber so as to render them more durable, which machinery was not in existence at the time of the mortgage and took the place of nothing that was therein specified, but was constructed by the railroad company as a new experiment after the execution of the mortgage.

In the conveyance of property acquired subsequently to the first mortgage, made by the Vermont Central Railroad Company to the trustees under that mortgage, on the 12th of May, 1854, the following words of description were used : All the articles of personal property acquired by the company since the date of the mortgage, consisting, among other things, of the following, to wit", and then followed an enumeration, by name, of several engines, and, by number, of several different kinds of cars : *Held,* that the general words were to be construed as referring to articles of the same nature and kind as those specifically named.

BILL IN CHANCERY. The question in this case concerned the owners of certain machinery for the purpose of *"burnetizing"* timber and ties, contained in a building at Northfield in the possession of the orators who were the trustees of the bond-holders under the first mortgage of the Vermont Central Railroad, and at the time of bringing the bill in the possession and management of that road, as such trustees.

The bill set forth the execution by the Railroad Company of said mortgage, on the 20th of October, 1851, in which the following words of description of the property conveyed were used : "The railroad and franchise of said Vermont Central Railroad Company, as the same is now located, constructed and improved, and as the same may be hereafter legally located, constructed and improved by said Company, extending from Windsor in the State of Vermont, to Burlington in said State ; and

Brainerd et als. *v.* Peck & Colby.

also the stations, engine-houses, shops, wood-houses, iron, sleepers, and other appendages, with all the lands thereto belonging and intended for the use and accomodation of said road, as they now are, and as they may be if repaired and improved, together with all the locomotives, engines, passenger, freight, dirt, hand, and other cars, and all other personal property belonging to said Company, as the same now is in use by said Company, or as the same may be hereafter changed or renewed by said Company ;" that on the 28th of June, 1852, the trustees under that mortgage entered into possession by deed of surrender from the railroad company, of all the property described in said mortgage, and have ever since had the possession and control thereof ; that afterwards the company acquired other property, including the particular machinery in question, which was purchased for the purpose of preparing ties and bridge timber used upon said road so as to prevent them from decaying, and which consisted of an iron cylinder, a vat, a set of pumps, and a carriage ; that on the 12th of May, 1854, the said company executed a conveyance unto the trustees under the first mortgage which recited the substance of that mortgage and stated that "the personal property existing at the date of the mortgage had become diminished and impaired by use, and other personal property acquired, which had gone into the possession of the trustees, and this deed is executed to carry into effect the mortgage." It then proceeded to convey " all the articles of personal property acquired by the company since the date of the mortgage, consisting, among other things, of the following, to wit:" and then enumerated by name several engines, and by number several different kinds of cars. In one of the recitals of this deed, the property conveyed was spoken of as "being now in the possession of the said trustees, and now used and enjoyed by them."

The bill further stated that at the September Term, 1858, of the Washington County Court, the defendant, Colby, recovered a judgment against the Vermont Central Railroad Company, and took out execution thereon, which was levied upon the machinery in question as the property of that company ; that that machinery was afterwards sold at auction by the officer upon such execution, and purchased by the defendants, who were

33

threatening to remove the same from the orators' possession. The bill claimed that the orators, under the mortgage and above mentioned deed of May 12th, 1854, acquired a good and perfect title to this machinery, and prayed for an injunction upon the defendants against any attempt to remove or control the same.

From the defendants' answer, and the testimony taken in the case it appeared that the machinery in question was constructed by the Vermont Central Railroad Company after the execution of the mortgage of Oct. 20th, 1851, and some time in 1852 or 1853. It was contained in a building which had been purchased by the company previous to the execution of the mortgage, and which, with the land on which it stood, was held in the preceding case of *Eldridge* v. *Smith et al.*, not to be included in the mortgage. Immediately after the construction of this machinery, it was placed in the possession of one Rogers, under a contract made by him with the company to furnish "*burnetized*" ties and timber to them for a series of years, and it continued in his possession under that contract until August, 1854, when he gave up his contract and the orators took possession of the machinery and held it until the defendants purchased it on the execution sale as set forth in the bill.

At the March term, 1861, in Washington County, Barrett, Chancellor, ordered the bill to be dismissed with costs, from which decree the orators appealed.

*Levi Underwood*, for the orators.

The defendants, *pro se.*

POLAND, Ch. J.—The orators claim to hold the "burnetizing works or machinery" attached and sold by the defendants on their execution against the Vermont Central Railroad Company, by virtue of the mortgage deed of Oct. 20, 1851, by said Company to their predecessors as trustees, and the deed of subsequently acquired property, from said company to said trustees, dated May 12, 1854.

The single question in the case is, whether the orators have a valid title under either, or both, of said deeds,

There seems to be no controversy as to the facts about the history of the property. These works were erected by the Vermont Central Railroad Company after the date of the railroad mortgage in 1851, either in 1852 or 1853, and were immediately taken possession of by Wm. Rogers under a contract with the railroad company, to furnish ties to them for a series of years; and Rogers continued in possession under this contract up to August 1854, which was subsequent to the date of the deed by the company of the after acquired property. After Rogers gave it up in 1854, the trustees who were then in possesson of the road, had the possession, and used the works occasionally, till taken by the defendants. This property is conceded not to have been in existence when the mortgage was executed, in 1851, but the orators claim to hold it under a provision in that mortgage, as an incident or accumulation of the personal property conveyed by that mortgage. The mortgage after describing the personal property mortgaged, engines, cars, &c., proceeds as follows, "and all other personal property belonging to said company as the same now is in use by said company, or as the same may be hereafter changed or renewed by said company."

As a general principle, it is well settled that property not in existence at the time, cannot be conveyed, either absolutely or by way of pledge or mortgage; though such agreements have, to some extent, been upheld by courts of equity. In some cases, when the furniture and rolling stock of a railroad has been mortgaged, it has been held that the mortgagee's right was unaffected by those changes and renewals incident to that species of property, and though the different articles were to a considerable extent not the same as those existing at the date of the mortgage, still that it was in substance the same, and treated like the increase of animals, or the crops grown on land, as the natural growth and product of that which was mortgaged. But there is not great harmony in the cases on the subject.

But this *burnetizing machinery,* we think, cannot be brought within the terms of the mortgage. Nothing of the kind existed at the time in the property mortgaged, and this took the place of nothing that was covered by the mortgage. It was, in no proper sense, any part of the furniture or equipment of the road, nor

was it substituted for any thing that was used upon the road, so that if the mortgage be held to cover new engines, or cars, or the like, procured to replace such as had been worn out, it could not be extended so as to embrace the property in question.

In *Pierce* v. *Emery*, 32 N. H. 484, cited by the orators' counsel, the act authorizing the mortgage expressly authorized the mortgage of subsequently acquired property.

The deed of subsequently acquired property of May 12, 1854, was apparently executed as a confirmation merely of the clause in the mortgage, that it should cover exchanged and renewed property. It recites the substance of the mortgage, and then goes on to recite, " that the personal property existing at the date of it, had become diminished and impaired by use, and other personal property acquired, which had gone into the possession of the trustees, that this deed is executed to carry into effect the mortgage."

Another reason why we think this deed of May 12, 1854, was not intended to embrace this apparatus is, that it is not mentioned, though the property is mostly particularly described. The deed is " of all the articles of personal property acquired by the company since the date of the mortgage, consisting, among other things, of the following, to wit :" and then enumerating by name several engines, and by number, several different kinds of cars. By the ordinary rule of construction, in such cases, when there is a special enumeration of particular articles, and also general words used, the general words refer to articles of the same nature and kind, as those specifically named.

If it had been intended to convey this burnetizing machinery by this deed, it is quite singular that standing by itself, disconnected from the general stock and equipment of the road, and both so bulky and expensive, it should not have been specifically named.

But what satisfies us fully that it was not intended to be, and was not, conveyed by this deed is, that the deed describes the property subsequently acquired, which the deed conveys, as "being now in the possession of the said parties of the second

part and now used and enjoyed by them" and in one of the recitals in the deed, the newly acquired property is thus spoken of, "which said property has from time to time as acquired by said company, been put into possession of said trustees for the better management, &c." Now, as before stated, this machinery at that time had never been in the hands or possession of the trustees at all, but was then, and continued for some time to remain, in the possession of Rogers, under a contract with the company, which was expected to continue for some years. This probably furnishes the real reason why they did not wish to convey it to the trustees.

We are all of opinion that neither by the mortgage of 1851, nor the subsequent deed of 1854, was any title conveyed to the orators to the property in question.

The decree of the chancellor dismissing the orators' bill is affirmed and the same is remanded to be perfected.