GEORGE J. SHATTUCK *vs.* MACKENZIE L. GREEN.
MACKENZIE L. GREEN *vs.* GEORGE J. SHATTUCK.

If a tenant in common of personal property, which is in the possession of a third person as
   bailee of all the owners, sells his undivided share, the possession of the bailee is his con-
   structive possession so as to attach to the sale an implied warranty of title.

The fact that the seller by parol of a chattel assigns and delivers to the buyer, whether as
   a muniment of title, or a symbolical delivery of the chattel, or a mere incident of the
   transaction, the bill of sale under which he himself acquired the chattel, does not pre-
   vent his liability upon an implied warranty of title.

TWO ACTIONS OF CONTRACT.   The first action, by Shattuck against Green, was on a promissory note dated December 5. 1866, for $300 payable on demand with interest, given by Green to Shattuck in part payment for an undivided half of the furniture, fixtures and stock in trade of an eating house in East Boston, called a dining saloon.   The answer set up a failure of the consideration for the note.

The second action, by Green against Shattuck, was for breach of Shattuck's alleged warranty of title to the property sold, and o recover the amount paid by Green therefor.

At the trial of both actions together, in the superior court, before *Rockwell,* J., there was put in evidence a bill of sale, signed and sealed by Wilks W. Corey, under date of December 7, 1866, in which said Corey, in consideration of $600 paid by Shattuck, did " sell and convey unto the said George J. Shattuck, and his heirs and assigns, one undivided half of a dining saloon, consisting of the stock in trade, fixtures, furniture, &c., said dining saloon being situated in East Boston, on Lewis Street, No. 5, to have and to hold the above described property to the said Shattuck and his heirs and assigns forever;" which bill of sale bore the following indorsement, signed

by Shattuck, and not dated: "Assigned over by George J. Shattuck to M. L. Green."

"It appeared in evidence that the property mentioned in this bill of sale was, at the date of said bill, in said dining saloon, which saloon was part of a building owned by the National Warehouse Company, and had been for some time used and occupied as a saloon by Corey & Stiles, said Corey being the son of Wilks W. Corey, who claimed the stock, fixtures and furniture, and who was the lessee of the saloon, either solely or in connection with his said son, or with said Corey & Stiles ; that there had been conversation between Green and Shattuck about the property, and afterwards, on December 7, 1866, Shattuck bought the property of Wilks W. Corey, by trading his house for it; and that he then told Green he had purchased it, and showed him the bill of sale, and sold the property to Green on December 11, 1866, receiving $250 in cash and the note in suit, and assigned the bill of sale. The testimony as to the conversations was somewhat in conflict; Shattuck representing that he purchased at Green's request, and for him, so that he could get the property partly on a credit; and Green representing that Shattuck purchased not by his request, but without his knowledge till he afterwards informed him of it. When Shattuck bought on December 7, he was in New Hampshire. Between the 7th and 11th of December he was not at East Boston; and he never entered into or took possession of the property, the whole business so far as he was concerned being done in New Hampshire. On December 11, Green took the bill of sale, with the assignment, and went to East Boston and entered into possession of the property with young Corey, (Stiles at the same time leaving,) and continued to carry on the saloon with young Corey, or some one holding his interest, till May 1867, when the National Warehouse Company claimed the personal property and held it. Shattuck, about a year afterwards, and after negotiation, received $200 of Wilks W. Corey, in full settlement of his claim on account of the failure of said Corey's title. The testimony conflicted somewhat as to the part which Green took in this settlement; Shattuck representing that he

consulted Green, and that he was present at and agreed to the settlement; and Green representing that he had no part in it, though he knew of it. Shattuck, in the first action, offered to give Green credit for this $200, seeking to recover the balance only. It did not appear that either Green or Shattuck knew of the claim and ownership of the National Warehouse Company to said personal property till some months after these purchases.

"Shattuck contended, and asked the judge to rule, that, as there was no evidence of any express warranty, neither was there evidence of any implied warranty from Shattuck to Green; because, in the sale of personal property, the vendor not being in possession, nor having any knowledge of the title which was not shared equally with the vendee, there is no ground in law of any implied warranty; that, without any implied warranty, Shattuck must recover on his note the balance after deducting the $200 received of Corey; and that Green could not maintain his action against Shattuck for the same reason, that no warranty could be implied from the sale without possession in the vendor.

"Green asked the judge to rule that, if Wilks W. Corey was in possession at the time of the sale by him to Shattuck, by himself or others, and made and delivered the bill of sale to Shattuck; and if Shattuck, not going near the property, and taking no other possession thereof, sold it to Green; and if Green under this sale went and took possesssion of the property, which was surrendered to him by those holding under Corey, and used it for some months unmolested; that would be a sufficient possession by Shattuck to support a warranty and title, and render him liable to Green for money paid to Shattuck for the property.

"The judge ruled that, upon this evidence, if submitted to the jury, they would not be authorized to find an implied warranty from Shattuck to Green, and that Green could not maintain his action or defence on the ground of warranty of title and failure thereof, or of a failure of consideration of said note and directed a verdict for the plaintiff in the first case and for the defendant in the second case, which verdicts the jury returned," and Green alleged exceptions.

*L. Wallace,* (*D. S. Richardson* with him,) for Green.

*T. Wentworth,* for Shattuck.

MORTON, J.  It is a general rule of law in this country, that in a sale of chattels a warranty of title is implied, unless the circumstances are such as to give rise to a contrary presumption.  1 Smith Lead. Cas. (6th Am. ed.) 242.  1 Parsons on Contracts, (5th ed.) 576, and cases cited.  If the vendor has either actual or constructive possession, and sells the chattels and not merely his interest in them, such sale is equivalent to an affirmation of title, and a warranty is implied.  In *Whitney* v. *Heywood,* 6 Cush. 82, 86, Dewey, J., says, "Possession here must be taken in its broadest sense," and "the excepted cases must be substantially cases of sales of the mere naked interest of persons having no possession, actual or constructive, and in such cases no warranty of title is implied."  The possession of an agent or of a tenant in common, holding the goods for the vendor and as his property, and not adversely, is the constructive possession of the vendor; and if he sells goods thus held as his, a warranty of title is implied.  *Hubbard* v. *Bliss,* 12 Allen, 590.  *Cushing* v. *Breed,* 14 Allen, 376.

In the case at bar, it appeared that Shattuck on December 7, 1866, bought of Wilks W. Corey an undivided half of the stock in trade, furniture and fixtures of a dining saloon in Boston, and on December 11, 1866, sold the same to Green.  Shattuck was in New Hampshire, and did not take manual possession of the property, but it remained, as it had previously been, in the possession and use of Corey & Stiles, who were carrying on the saloon, said Corey being a son of Wilks W. Corey.  Green, after the sale to him, entered into possession in connection with the younger Corey, and remained in possession until the property was taken by the National Warehouse Company under a paramount title.  Thus Corey & Stiles were in actual possession of the chattels at the time of the sale to Green.  There was no evidence that they held them adversely to Shattuck, or to Wilks W. Corey and Shattuck, who by the sale of December 7 became tenants in common.  On the contrary, there was evidence which might well satisfy the jury that they held

possession of them as the bailees or agents of Wilks W. Corey and Shattuck. If this was so, and Shattuck sold to Green one undivided half of the property as his, there was an implied warranty of title. The ruling at the trial that the jury would not be authorized find an implied warranty was therefore erroneous. The argument that the written contract between the parties contains no express warranty, and excludes an implied one, cannot prevail. The parties did not put their contract in writing. The indorsement on the bill of sale does not purport to set out the contract of sale. That appears to have been by parol; and the fact that the vendor delivered the bill of sale, with such assignment on it, either as a muniment of title, or as a symbolical delivery, or as an incident of the transaction, does not prevent his liability upon the implied warranty of title.

In considering these exceptions, we are obliged to assume as true all the facts which the testimony in favor of the excepting parties tends to establish. At the new trial, it will of course be for the jury to decide whether there was in fact a sale by Shattuck to Green, or whether Shattuck acted merely as the agent of Green in the purchase of Corey, so that no warranty of title would be implied against him.

*Exceptions sustained.*