AUGUSTA I. WILSON AND OWEN E. WILLIAMS *v.* COMMERCIAL UNION ASSURANCE COMPANY, LIMITED.

November Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed February 4, 1916.

*Fire Insurance—Conditions Precedent—Title or Interest of Insured—Knowledge of Agent—Effect—P. S. 4775—"Affirmative Warranty"—"Promissory Warranty"—Condition Subsequent—Construction Against Forfeiture—Breach of Condition—Knowledge of Insurer—Effect.*

Unless the case shows such special features as will prevent it, a fire insurance policy was void when issued where it provides that it shall be void if the interest of the insured is not truly stated therein, or is other than unconditional or sole ownership, or if the subject of insurance is a building on ground not owned by the insured in fee simple, and the land on which the insured building stood was owned by one of the insured and his wife, who was not one of the insured, as tenants of the entirety, and a mortgagee's interest in the real and personal property was not stated in the policy, and none of those matters were covered by any indorsement on or attached thereto.

Under P. S. 4775, providing that when application for fire insurance is taken or transmitted by or through a local agent of the insurer, or by a person acting under the employment of such agent, it shall be deemed to be the act of the insurer, the knowledge of the hus-

band of the insurer's local agent, who solicited insurance in her behalf, worked with her in the office, and wrote the body of the policy, which was countersigned by his wife as such agent, of the true state of the title to the insured property and of the incumbrances thereon, though it did not appear that his wife had that knowledge, was the knowledge of the insurer.

"Warranties" in contracts of insurance are affirmative and promissory; the former relate to matters existing at or before the issuance of the policy, and are conditions precedent, the latter relate to matters arising after the issuance of the policy, and are conditions subsequent.

Courts lean strongly against forfeiture of insurance policies, because of the peculiar features of and attending those contracts, their numerous and intricate conditions prepared in advance by the insurer, and the practice of the insured to leave the matter to the insurer's local agent, who is usually a competent and reliable adviser.

Where the insured, before the policy was issued, informed the husband of the insurer's local agent, who was acting as her agent, of the true state of the title to the insured property and of the incumbrances thereon, since, under P. S. 4775, the knowledge of such local agent, or of her agent, was the knowledge of the insurer, the insurer could not take the benefit of the contract by receiving the premiums and thereafter defeat recovery on the ground that the true state of the title to the insured property and of the incumbrances thereon was not stated in the policy.

GENERAL ASSUMPSIT on a fire insurance policy. Plea, the general issue. Trial by jury at the March Term, 1915, Rutland County, *Waterman,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*J. W. Redmond* for the defendant.

*William H. Preston* for the plaintiffs.

POWERS, J. The fire insurance policy on which this action is predicated was issued by the defendant's agent at Fair Haven. It runs to Mrs. A. I. Wilson and Owen E. Williams, and covers certain buildings and personal property therein. It contains many stipulations and conditions, including the following: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein."

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if * * * the hazard be increased by any means within the control or knowledge of the insured, * * * or if the interest of the insured be other than unconditional or sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple; or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage."

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto; and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and as to such provisions and conditions, no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

It appears that when this policy was issued, the real estate covered by it was owned by Owen E. Williams and his wife, Jennie A. Williams, in joint tenancy. The personal property belonged to Owen E. Mrs. Wilson held a valid mortgage on the real estate, which at the date of the policy amounted to $1,200, and she also held a valid chattel mortgage on the personal property to secure another debt, which at the time named amounted to some $300. No change was made in the title between the date of the policy and April 4, 1914,—the date of the fire which destroyed the property insured.

It thus appears that several of the conditions above recited were broken when the policy was issued. For the interest of the insured in the property was not truly stated in the policy; the interest of the insured was other than unconditional or sole ownership; the insurance covered buildings standing on ground not owned by the insured in fee simple. All this comes from the fact that Mrs. Williams' interest in the property is omitted from the policy. *Schroedel* v. *Humboldt Fire Ins. Co.,* (Pa.) 27 Atl. 1077. The policy also covered personal property incumbered by a chattel mortgage. And none of these matters were covered or alluded to by any endorsement upon or attachment to the policy.

It necessarily follows that there can be no recovery here if effect is to be given to the provisions referred to; and effect must be given to them unless the case shows such special features as will prevent.

It appeared below that the Fairhaven agent of the defendant was Adelaide W. Sheldon, wife of H. K. Sheldon. That the latter was an experienced insurance man; that he solicited insurance in Mrs. Sheldon's behalf, and worked with her in the office. That he wrote the body of the policy here in question, and that Mrs. Sheldon countersigned it as agent of the company. That Mr. and Mrs. Sheldon visited the premises about two months before the policy was written, and the former examined the same with a view of insuring them. That on another occasion a few months before the policy was issued Mr. Williams called at the office of the agency and talked with Mr. Sheldon regarding the insurance on this property. That on both these occasions, the plaintiffs informed Mr. Sheldon of the true state of the title and the incumbrances thereon as hereinbefore set forth. There was, however, no direct evidence that Mrs. Sheldon knew how the title stood or that the property was mortgaged. Nor was there anything to indicate that the company itself knew the facts regarding these matters.

The first question presented, then, is as to the effect of this knowledge on the part of Mr. Sheldon. The defendant insists that evidence thereof was improperly admitted, because Mr. Sheldon was not the defendant's agent, and therefore his knowledge of the facts was immaterial. But under our holding in *Mullin* v. *Vt. Mutual Fire Ins. Co.,* 58 Vt. 113, 4 Atl. 817, the knowledge acquired by Sheldon was, in legal effect, acquired by

Mrs. Sheldon, the company's agent. In that case one Butler acted for Manley, the agent, in much the same way that Sheldon acted for Mrs. Sheldon; and it was held that his knowledge was the knowledge of Manley, and bound the company. Moreover, by No. 128, Acts of 1894, now found in P. S. 4775, it was provided that "when application for fire insurance is taken or transmitted by or through a local or traveling agent of a fire insurance company, or a person acting under the employment of an agent of such company, it shall be deemed to be the act of the company; and, in questions arising as to the facts stated in such application, such agent or sub-agent shall be deemed to be the agent of the insurers and not of the insured." The comprehensive language of this statute makes it apparent that it was intended to cover all companies, domestic and foreign, and all applications written and verbal. Accordingly, we hold that Sheldon's knowledge was the company's knowledge and is to be given effect accordingly. What standing, then, have these conditions and provisions, in view of the fact that the company knew all the facts when it issued the policy?

Warranties in contracts of insurance are of two kinds: affirmative and promissory. The former relate to matters existing at or before the issuance of the policy, and have the effect of conditions precedent. The latter relate to matters arising after the issuance of the policy, and have the effect of conditions subsequent. Those here involved are of the first-named class, and the discussion herein will have reference to that class only. Attention is called to the distinction since it is very frequently overlooked and is not taken note of in the very comprehensive brief of this defendant.

There is a decided and growing tendency on the part of the courts to treat insurance contracts as standing in a class by themselves. However illogical this tendency may be said to be, its existence will not be questioned. Courts, and among the number our own, have taken occasion to refer to some of the peculiar features of and attending these contracts; that the policy contains so many and such intricate conditions and stipulations that an ordinary mind cannot grasp their significance; that the opportunity for negotiation and discussion of terms, usual in the case of ordinary contracts, is denied an applicant for insurance, inasmuch as the terms of the policy are prepared and fixed in advance, and there is little for the property owner

to do but to take the policy offered him or go without protection; that it is the general practice with the insuring public to leave it all to the agent, who is usually a competent and reliable adviser. From these and perhaps some other considerations growing out of the advantage which the company has over the applicant, the courts have very generally leaned strongly against forfeitures invoked in defence of honest claims.

As would be expected, the cases on this subject are in hopeless conflict. Indeed, those in the same jurisdiction are frequently out of harmony and sometimes positively inconsistent. See note to *Gish* v. *Ins. Co.*, 13 L. R. A. (N. S.) 826. A study of them will show, however, that with some exceptions, notably Massachusetts and the Federal Supreme Court, the very generally accepted rule is that stated in *Wood* v. *American Fire Ins. Co.*, 149 N. Y. 382, 44 N. E. 80, 52 Am. St. Rep. 733, as follows: "The restrictions inserted in the contract upon the power of the agent to waive any condition unless done in a particular manner cannot be deemed to apply to those conditions which relate to the inception of the contract, when it appears that the agent has delivered it and received the premiums with full knowledge of the actual situation. To take the benefit of a contract with full knowledge of all the facts, and attempt afterwards to defeat it when called upon to perform by asserting conditions relating to those facts would be to claim that no contract was made, and thus operate as a fraud upon the other party." The cases adopting this rule, are too numerous for citation. See note, 2 Ann. Cas. 280. Among those presently accessible to the writer are the following: *Skinner* v. *Norman*, 165 N. Y. 565, 59 N. E. 309, 80 Am. St. Rep. 776; *Medley* v. *German Alliance Ins. Co.*, 55 W. Va. 342, 47 S. E. 101, 2 Am. & Eng. Ann. Cas. 99; *Virginia F. & M. Ins. Co.* v. *Richmond Mica Co.*, 102 Va. 429, 46 S. E. 463, 102 Am. St. Rep. 846; *Hartford Fire Ins. Co.* v. *Keating*, 86 Md. 130, 38 Atl. 29, 63 Am. St. Rep. 499; *Hoose* v. *Prescott Ins. Co.*, (Mich.) 47 N. W. 587, 11 L. R. A. 340; *State Mutual Ins. Co.* v. *Latourette*, 71 Ark. 242, 74 S. W. 300, 100 Am. St. Rep. 63; *Anderson* v. *Manchester Fire Assurance Co.*, 59 Minn. 182, 50 N. W. 1095, 63 N. W. 241, 28 L. R. A. 609, 50 Am. St. Rep. 400; *Menk* v. *Home Ins. Co.*, 76 Cal. 51, 14 Pac. 837, 18 Pac. 117, 9 Am. St. Rep. 158; *Johnson* v. *Aetna Ins. Co.*, 123 Ga. 404, 51 S. E. 339, 107 Am. St. Rep. 92; *McGonigle* v. *Susquehanna Mut. F. Ins. Co.*,

168 Pa. St. 1, 31 Atl. 868; *Cent. Market Street Co.* v. *No. British & M. Ins. Co.,* (Pa.) 91 Atl. 662; *Leisen* v. *St. Paul F. & M. Ins. Co.,* (N. D.) 127 N. W. 837, 30 L. R. A. (N. S.) 539; *Reed* v. *Equitable F. & M. Ins. Co.,* (R. I.) 24 Atl. 833, 18 L. R. A. 496; *Humboldt Fire Ins. Co.* v. *Ashby,* (Ind.) 108 N. E. 150; *Farmers' Mut. Ins. Asso.* v. *Tankersley,* (Ala.) 69 So. 410; *Mesterman* v. *Home Mut. Ins. Co.,* 5 Wash. 524, 32 Pac. 458, 34 Am. St. Rep. 877; *Hartford F. Ins. Co.* v. *Haas,* (Ky.) 9 S. W. 720, 2 L. R. A. 64; *Home Ins. Co.* v. *Mendenhall,* 164 Ill. 458, 45 N. E. 1078, 36 L. R. A. 374; *Funk* v. *Anchor F. Ins. Co.,* (Ia.) 153 N. W. 1048; *Simpson* v. *Oh. Farmers Ins. Co.,* (Mich.) 151 N. W. 610; *Graham* v. *Fire Ins. Co.,* 48 S. C. 195, 26 S. E. 323, 59 Am. St. Rep. 707; *Bigelow* v. *Granite St. F. Ins. Co.,* (Me.) 46 Atl. 808; *Spalding* v. *N. H. F. Ins. Co.,* (N. H.) 52 Atl. 858; *Germania Fire Ins. Co.* v. *Barringer,* (Okl.) 142 Pac. 1026; *Welch* v. *Fire Asso.,* (Wis.) 98 N. W. 227.

Some of the foregoing cases, it should be noted, hold that the knowledge which binds the company and so effects an estoppel must be that of a general agent. But many hold that one who is authorized by the company to solicit, negotiate and issue contracts of insurance is a general agent, within the meaning of this rule. But we need give no attention to this distinction since the statute makes the act of the local agent the act of the company. P. S. 4775.

Pertinent suggestions on this subject are to be found in our own cases.

In *Brink & Co.* v. *Merchants & M. Ins. Co.,* 49 Vt. 442, both affirmative and promissory warranties were concerned, though the latter were mainly relied upon. The agents of the defendant knew when they delivered the policy of the use to which the property had been and was being put. The court said that "by executing the policy with full knowledge of these facts, the company is estopped from setting up any defence predicated upon the plaintiff's omission to give them formal notice of these facts."

*Carrigan* v. *Insurance Co.,* 53 Vt. 418, 38 Am. Rep. 687, involved the binding force of an agent's assurance that benzine was covered by the terms of the policy. It was said in the opinion that the agent's statement that benzine could be kept by assured would be inadmissible as showing that this was a part of the contract, but as showing that the defendant had

knowledge that it was kept by the assured, it was competent; and if, knowing this, the company subsequently treated the policy in force and levied assessments upon it, this amounted to a change of the contract. These are the very circumstances in which other courts find an estoppel. And it is submitted that it is wholly immaterial whether one or more assessments are collected after the company has notice of the facts; nor does it change the situation if the company collects its entire toll at the time the policy is delivered, if it is then in possession of the facts.

In *Tripp & Bailey* v. *Vermont Life Ins. Co.*, 55 Vt. 100, it was held that evidence that the company had previously accepted premiums long after the time of payment specified in the policy tended to show a waiver on the part of the company of a provision of the policy that such default should avoid the policy. In *Smith* v. *Niagara F. Ins. Co.*, 60 Vt. 682, 15 Atl. 353, 1 L. R. A. 216, 6 Am. St. Rep. 144, a case involving the authority of a local agent, this significant language is used: "We think he (the local agent) had no authority to waive that condition of the policy requiring a sworn statement in the settlement of a loss, although he might, unless restricted, waive conditions concerning the issuance of a policy or anything apparently within the scope of his authority in the business committed to him." This decision was rendered before the amendment of the statute hereinbefore cited,—since which time the statement "unless restricted" would be inapplicable for the simple reason that the local agent cannot be restricted in such matters.

*Ring* v. *Ins. Co.*, 51 Vt. 563, is very much in point. There the applicant correctly informed the local agent of the state of the title to the property insured; the agent, on his own responsibility, divided the mortgage equally between the two properties covered, and so stated it in the application. Evidence of these facts was excluded and this was held error, on the ground that the proposed evidence would show an estoppel. The parol evidence rule was invoked in support of the ruling but the court said in effect that the purpose of the evidence was to show that however false the statement, the company through its agent was fully informed as to the facts, and of its own motion incorporated a false statement in the application. In *Ring* v. *Insurance Co.*, 54 Vt. 434, it was said that if a company after it had notice of a mortgage, continued to treat the assured as holding a sub-

sisting policy and bound by its terms and conditions, it would be a waiver of the forfeiture on this account.

In *Mullin* v. *Ins. Co.*, hereinbefore cited, it was held that the company was estopped from setting up a forfeiture on account of the misstatement as to title and occupancy, by the knowledge of the facts on the part of .Butler.   In *Tarbell* v. *Ins. Co.*, 63 Vt. 53, 22 Atl. 533, the owner correctly reported the state of the title to the company's agent, who misstated the same in the application.   It was held that the knowledge of the agent bound the company, and he "being fully informed by the applicant in regard to the true state of the title and of the relations of Tarbell and Thayer thereto, his representations thereof in the application bound the defendant and estopped it from denying the truth of the representations of the title as there made."

There is nothing in our cases when read in the light of actual case made by the record that is to the contrary.   It thus appears that this Court is deliberately committed to the doctrine established by the cases above cited.   To be sure, it does not appear that the policies involved in our cases contained the restriction on the authority of the agents to waive except in a particular manner; but the cases show that this provision does not affect the question; and, besides, the statute referred to makes such restrictions wholly inoperative.   To hold otherwise would be to allow the companies, by multiplying their limitations to repeal or emasculate the statute.

The plain, human justice of this doctrine is perfectly apparent.   To allow a company to accept one's money for a policy of insurance which it then knows to be void and of no effect, though it knows, as it must, that the assured believes it to be valid and binding, is so contrary to the dictates of honesty and fair dealing, and so closely related to positive fraud, as to be abhorrent to fair minded men.   It would be to allow the company to treat the policy as valid long enough to get the premium on it, and leave it at liberty to repudiate it the next moment. This cannot be deemed to be the real intention of the parties. To hold that a literal construction of the policy expressed the true intention of the company would be to indict it for fraudulent purposes and designs which we cannot believe it to be guilty of.

We hold, therefore, that the provisions here relied upon do not, in the circumstances, prevent a recovery, and find no error in the record.

*Affirmed.*