GEORGE S. ALLEN *v.* BERKSHIRE MUTUAL FIRE INSURANCE COMPANY.

May Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed October 3, 1933.

472

*Stanley J. Chamberlin* and *John J. Wilson* for the plaintiff.

*Wilson & Keyser* for the defendant.

MOULTON, J. The material provisions of the theft insurance policy issued by the defendant and covering the plaintiff's automobile, are these: "G. Theft, Robbery and Pilferage * * * * excepting by any person * * * * to which person * * * * the assured voluntarily parts with title and/or possession, whether or not induced to do so by any fraudulent scheme, trick, device or false pretence. * * * * The policy does not insure against the wrongful conversion, embezzlement or secretion by a mortgagor, vendee, lessee or other person in lawful possession of the insured property under a mortgage, conditional sale, lease or other contract or agreement, whether written or verbal." A rider attached to the policy contains the following: "2. Exclusions. This policy does not cover * * * * (d.) Under the perils of theft, robbery and pilferage * * * * loss suffered by the assured in case he voluntarily parts with title to or possession of any automobile at risk hereunder, whether or not induced to do so by

any fraudulent scheme, trick, device or false pretence or otherwise. (e) Theft, robbery or pilferage * * * * of any automobile stored * * * * in any building not securely enclosed and locked when unattended * * * *.''

According to the finding of facts made by the trial court, the plaintiff, on July 3, 1931, permitted Henry Smith, a prospective purchaser, to take the automobile in question on trial. On July 17 the plaintiff went to Smith's home and told him that the automobile must either be paid for or returned. Smith thereupon delivered the transmission keys to the plaintiff, who proposed to remove the car at once. Smith, however, said that he would drive the car back to the plaintiff's garage on the following Monday, July 20, and it was arranged that it should be left with Smith until that day. On July 18 Smith decamped with the automobile, and has since remained in parts unknown. The automobile was found sometime later in Denver, Colorado. While it was upon Smith's premises it was kept in an unlocked garage. The fair value of it, on July 18, was $600. Upon these facts judgment was rendered for the defendant, and the plaintiff excepted. His exceptions relate to the failure of the court to find in accordance with certain requests, and to the judgment upon the facts as found.

The controversy between the parties seems largely to turn upon the meaning to be given to the word ''possession,'' as used in the portions of the policy above quoted. The plaintiff contends that it is to be construed as something more than a mere limited or special custody, and must be of a permanent nature, or coupled with an interest in the property, in order to come within the terms of the contract of insurance. The defendant's position is that the word is to be considered as meaning the occupancy and custody of a chattel and exercising dominion over it, and that, taken in this sense, the findings show that the plaintiff had voluntarily parted with the possession of the automobile and so was not entitled to recover.

The language of the policy, being that of the defendant company, all the conditions and provisions favorable to it are to be strictly construed against it, although the entire contract is to be construed together, for the purpose of giving force and effect to each clause. *Kimball* v. *N. Y. Life Ins. Co.*, 96 Vt. 19, 28, 116 Atl. 119; *Brink* v. *Merchants, etc., Ins. Co.*,

49 Vt. 442, 457. Equivocation and uncertainty, whether in the significance of the terms used or in the form and construction of sentences, are to be resolved in favor of the insured and against the insurer. *Spaulding, Admr.* v. *Mutual Life Ins. Co.,* 96 Vt. 65, 80, 117 Atl. 376; *Stanyan* v. *Security Mutual Insurance Co.,* 91 Vt. 83, 86, 99 Atl. 417, L. R. A. 1917C, 350. The reason for this rule lies, as is pointed out in *Wilson et al* v. *Commercial Union Assurance Co.,* 90 Vt. 105, 109, 110, 96 Atl. 540, in the peculiar features of and attending contracts of insurance in which the insurer has an advantage over the applicant for insurance, although of course the provisions of the policy, if clear and unambiguous, must be given force and effect as an express condition of the validity of the contract. *Bardwell* v. *Commercial Union Assurance Co.,* 105 Vt. 106, 163 Atl. 633, 635.

"Both in common speech and in legal terminology," says Mr. Justice Lamar in *National Safe Deposit Co.* v. *Stead,* 232 U. S. 58, 67, 58 L. ed. 504, 509, 34 Sup. Ct. 209, "there is no word more ambiguous in its meaning than possession. It is interchangeably used to describe actual possession and constructive possession which often so shade into one another that it is difficult to say where one ends and the other begins." A "constructive possession" is defined to be a possession in law without possession in fact. *Hodges* v. *Eddy,* 38 Vt. 327, 344; *Brown* v. *Volkenberg,* 64 N. Y. 76, 80. It may exist where there is a present right and the actual possession is either vacant or is consistent with the right of the owner to an immediate and actual possession by himself. *Sullivan* v. *Sullivan,* 66 N. Y. 37, 41; *Pritchett* v. *State,* 2 Sneed (Tenn.) 285, 62 A. D. 468, 470. The term is applied to chattels as well as to land. See *National Safe Deposit Co.* v. *Stead, supra,* and cases hereinafter cited. Personal property in the hands of an agent or bailee has been held to be in the constructive possession of the bailor. *Reynolds* v. *Roberts,* 57 Vt. 392, 396; *Shattuck* v. *Green,* 104 Mass. 42, 45. See, also, *State* v. *Potter and wife,* 42 Vt. 495, 505; *Commonwealth* v. *Conlin,* 188 Mass. 282, 283, 74 N. E. 351; *Commonwealth* v. *Tivnon,* 8 Gray (Mass.) 375, 381, 69 A. D. 248.

No less latitude has been employed in construing the word "possession" when used in an insurance policy. In *Security Ins. Co.* v. *Sellers-Sammons-Signor Motor Car Co.* (Tex. Civ.

476

App.), 235 S. W. 617, 621, a theft insurance policy covered a certain automobile "until the same otherwise passes out of the possession of the assured." The insured permitted a prospective purchaser to take the automobile to test it, and while in the latter's possession the loss occurred. It was held that the foregoing provision in the policy should not be interpreted "as applying when the possession of the car is parted with for merely a temporary expediency, subject to be recalled at any moment, with no intention to pass title" (page 621 of 235 S. W.). It was said that the possession of the prospective purchaser was in a very qualified and limited sense and was intended and understood to be temporary only with the distinct recognition of the right of the insured to retake the property at any time.

■ In the case before us, Smith's status as prospective purchaser came to an end when, after demanding the purchase price, or the automobile, the plaintiff took back the transmission keys. Thereafter he was merely a naked bailee, and, as such, had only the bare custody of the car for a limited time and special purpose. He had no right otherwise to use it than to drive it to the plaintiff's premises. The plaintiff, on the other hand, could take it on demand at any time before the day for its return should arrive. *Dohorty* v. *Madgett*, 58 Vt. 323, 325, 2 Atl. 115. The possession of Smith was thus consistent with the right of the plaintiff to the immediate and actual possession in himself. We hold that the plaintiff had constructive possession of the automobile at the time of its loss, and, in accordance with the rule of construction which has been stated, we also hold that the plaintiff had not parted with possession within the meaning of the policy.

■ The defendant argues that "theft" means larceny, and that since the taking was by a bailee, there was no larceny because the bailee's possession was lawfully obtained and his felonious intent was formed after the delivery to him. But the word is to be given the meaning attributed to it in common use. *Bloom* v. *Ohio Farmers' Ins. Co.*, 255 Mass. 528, 152 N. E. 345; *Granger* v. *New Jersey Ins. Co.*, 108 Cal. App. 290, 291 Pac. 698, 700. "Theft" is a wider term than larceny, including other forms of wrongful deprivation of the property of another, and acts constituting embezzlement may properly be so called.

Bouvier Law Dict. (Rawles' 3rd revision) 3267, title ''Theft.'' As Chief Judge (now Mr. Justice) Cardozo says in *Van Vechten* v. *American Eagle Fire Ins. Co.*, 239 N. Y. 303, 146 N. E. 432, 38 A. L. R. 1115, 1116: ''We assume that larceny by a bailee or fiduciary would be theft within the policy, although at common law it would be classified under the heading of embezzlement. * * * * The distinction, now largely obsolete, did not ever correspond to any essential difference in the character of the acts or in their effect upon the victim. The crimes are one to-day in the common speech of men as they are in moral quality.''

Upon the findings it is clear that the taking was *animo furandi. Van Vechten* v. *American Eagle Fire Ins. Co., supra; Seither* v. *Pennsylvania, etc., Ins. Co.*, 104 Pa. Super. Co., 260, 159 Atl. 53, 54. We consider that the act of Smith was a theft of the automobile within the meaning of the policy.

■■ Nor does the provision exempting from the risk assumed a wrongful conversion, embezzlement, or secretion by a person in lawful possession of the insured property under a mortgage, conditional sale, lease or other contract, written or verbal, relieve the defendant of liability. Under contracts of mortgage, conditional sale, or lease, the mortgagee, vendee, or lessee has obtained a certain interest in, or title to, the property itself. A naked bailee has no such interest or title, and the contract of bailment is not at all of the same nature or character as the contracts specifically mentioned. It is a rule of construction that when words of a particular description are followed by words of general import, the latter can be held to include only things similar in character to those specially named. *Cross* v. *Frost*, 64 Vt. 179, 182, 23 Atl. 916; *In re Barre Water Co.*, 62 Vt. 27, 30, 20 Atl. 109, 9 L. R. A. 195; *Park's Admr.* v. *American Home Missionary Society*, 62 Vt. 19, 25, 20 Atl. 107; *Brainerd* v. *Peck*, 34 Vt. 496, 499. Therefore the contract of bailment under which Smith had the custody of the plaintiff's automobile does not come within the exemption contained in this paragraph.

■■ The remaining paragraph in the policy upon which the defendant relies is that containing the provision against liability when the automobile is stored in a building not securely enclosed and locked when unattended. The fact that the car had been so stored before the taking did not avoid the contract

478

of insurance. The protection of the policy was suspended only during the time the car was stored in this manner, and was attached again as soon as the situation came to an end. *Beecher* v. *Vt. Mut. Fire Ins. Co.*, 90 Vt. 347, 348, 98 Atl. 917; *Doerr* v. *National Fire Ins. Co.*, 315 Mo. 266, 285, 285 S. W. 961, 54 A. L. R. 1336, 1341. Where, as here, the automobile was taken by the person in whose lawful custody it was, and in whose building it had been stored, it cannot be said to have been unattended at the time, and so this provision does not apply.

It follows that upon the facts found the judgment for the defendant was error, and therefore it is unnecessary to consider the plaintiff's exceptions to the failure of the trial court to find other facts as requested. Since there is nothing in the record to show that the value of the automobile is not within the coverage of the policy, there is no need to remand the case, and final judgment may be rendered here.

*Judgment reversed, and judgment for the plaintiff to recover the sum of $600 and his costs.*