STATE *v.* MAX SCHWARZCHILD.

May Term, 1941.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 7, 1941.

*Raymond B. Daniels* (*George L. Hunt* of counsel) for respondent.

*Reginald T. Abare,* State's Attorney, and *Alban J. Parker,* Attorney General, for the State.

STURTEVANT, J. The respondent, Max Schwarzchild, was convicted of the crime of grand larceny at the September term, 1940, of Washington County Court and the case is here on his excep-

tions; first to the court's action in denying his motion for a directed verdict, secondly to rulings as to the admission or exclusion of certain evidence.

The grounds of the respondent's motion for a verdict in his favor briefly stated are that at the time of the alleged theft the Peoples National Bank of Barre, hereinafter referred to as "the bank", had neither possession or right of possession of the property in question as alleged in the information and that the evidence showed such possession held by the respondent.

■ ■ In considering this question we should have in mind the rule that whether there was any evidence reasonably tending to support the charge as made by the State was a question for the court; whether such evidence, if found to be present, was sufficient was a question for the jury. *State* v. *Gaffney and Fields*, 56 Vt. 451, 453. That is, in dealing with this question the evidence must be considered in the light most favorable to the State. So considered the jury could reasonably find the following facts.

At all times material here the respondent was engaged in a general maple syrup business at Barre, Vermont, under the trade name of "Black Sign Maple Syrup Company", hereinafter referred to as "the company". He arranged with the bank to finance him in purchasing syrup in the spring of 1939 up to an amount of $25,000. According to the plan followed the bank advanced various amounts of cash to the company which were considered as temporary unsecured loans. With this money syrup was purchased and delivered at Barre. Upon arrival there it was checked as to weight, etc., by someone acting for the bank. A bonded warehouse with one Fisher as proprietor was set up in that city for the purpose of providing a safe place for the storage of this syrup. Negotiable warehouse receipts were issued to the company by Fisher for the syrup as it was received and these were indorsed by the company and delivered to the bank. Upon receipt of these the bank made loans to the company up to eighty per cent of the value of the syrup described therein. These loans were applied to pay the unsecured temporary loans made by the bank. As the respondent needed any of this syrup in the conduct of the company's business he paid *pro rata* for such amount as he desired and the bank authorized the warehouse proprietor to deliver same to the company. While some of these authorizations were verbal they were later each confirmed in writing by the

bank. One Nichols, a vice-president of the bank, acted for it in most of the negotiations between it and the company.

Early in the year 1940 the building where the warehouse was located was sold and it became necessary to move the syrup to another location. Nichols, acting for the bank, took up the matter of renting a building for the storage of this syrup with one Campbell and the respondent also had some talk with Campbell as to this matter. It was arranged that the syrup should be moved to and stored in the basement of the Campbell building. The company paid the storage charges at the so-called Fisher warehouse and the rent on the Campbell building. Nichols talked with one Owens about moving this syrup which Nichols said belonged to the bank to the Campbell, building. The respondent also had some talk with Owens about this trucking matter and the company paid the charges for same. The bank authorized warehouseman Fisher to allow Owens to remove the syrup from the Fisher warehouse and after this was done it no longer regarded Fisher liable to it upon the warehouse receipts but the bank retained the receipts and claimed ownership of the syrup moved by Owens. This syrup was in 50 gallon drums and there were 146 of these moved to the new location. The value of this syrup was about $10,000.

The respondent had Owens purchase a new lock and put it on the Campbell building and the keys to this were left with the respondent and kept in the company's office. When the bank wished to go to the Campbell basement where the syrup was stored it was necessary to get the keys from the company. The door leading from the first floor to the basement was not locked and the company used the building excepting the basement for storage of cartons and other materials.

In the latter part of May or June 1940 the bank learned that the respondent had without its knowledge or consent withdrawn the syrup from each and all of these drums, sold it and collected the pay for same. This was discovered when agents of the bank went to check the syrup to see how it was keeping and found that each of the drums contained water instead of syrup.

While the respondent claimed at the trial that he had the permission of the bank to sell the syrup there was ample evidence to the contrary and the jury was fully justified in finding the facts as stated above.

■■ There is no dispute here as to the fact that when Fisher issued warehouse receipts to the company for this syrup the company had title to it. Therefore under the provisions of the Uniform Warehouse Receipts Act, P. L. 7427, when these receipts were negotiated to the bank it thereby obtained title to the property covered by them. The syrup was placed in the Fisher warehouse for the special purpose of storage until such time as the company should pay the bank for it and as fast as this was done the bank passed title to the company and authorized delivery of same to it. There was nothing under the circumstances concerning the moving of the syrup to the Campbell building affecting the bank's title to this property. It was placed in the Campbell basement for storage and the fact that Fisher was authorized to allow Owens to remove it from the place where first stored worked no change as to respondent's right to appropriate this property without first paying the bank for it. At most he was merely a naked bailee of it. The title and right of actual possession at any time were held by the bank. Under the circumstances here the bank had constructive possession of the property in question. *Allen* v. *Berkshire Mutual Fire Insurance Company*, 105 Vt. 471, 475, 476, 168 Atl. 698, 89 A. L. R. 460, and authorities there cited.

■ Under the provisions of P. L. 8440 it is not material whether the respondent took the syrup from the actual or constructive possession of the bank. In either case the result is the same. It follows that there is no merit in this exception.

The respondent has briefed two exceptions to the court's rulings as to reception and rejection of evidence and we take these up in the order mentioned in his brief.

■ The warehouse receipts issued by Fisher to the company and by it negotiated to the bank were offered in evidence by the State and received over the respondent's objection and exception, upon the ground that they had no tendency to show that the bank had title to the property mentioned therein. From what has been hereinbefore stated it appears that when the bank received these certificates it thereby obtained title to the property covered by them by force of P. L. 7427. It follows that the certificates were properly received in evidence as against the objection made.

The respondent stated that on May 26, 1940, which time was subsequent to the time when he had sold the syrup in question,

the bank took a new note from him covering the amounts of the various notes given before the syrup was moved to the Campbell building. This note was offered in evidence, excluded and exception saved.

■ The ground of this exception mentioned in the brief is that the act of the bank in taking the note was inconsistent with the claim made by the State that the bank had possession and ownership of the syrup at the time of the alleged theft. The respondent does not point out how or why this act of the bank is claimed to be inconsistent with the State's contention and no authorities are cited to support his claim. In his brief he merely repeats in substance what he stated at the time the exception was saved. This is inadequate briefing and merits no consideration here. *Johnson* v. *Moore*, 109 Vt. 282, 288, 196 Atl. 246. We give this exception no further attention.

*Exceptions overruled. Let execution be done.*