BROTHERHOOD OF RAILWAY AND
STEAMSHIP CLERKS, FREIGHT
HANDLERS, EXPRESS AND STA-
TION EMPLOYES, Appellant,

v.

RAILWAY EXPRESS AGENCY, Incor-
porated, Appellee.

No. 12795.

United States Court of Appeals
Sixth Circuit.

Nov. 5, 1956.

182

Robert S. Marx, Cincinnati, Ohio (Leonard D. Slutz, Harry M. Hoffheimer, Nichols, Wood, Marx & Ginter, Cincinnati, Ohio, on the brief), for appellant.

William A. McKenzie, Cincinnati (Graydon, Head & Ritchey, Cincinnati, Ohio, on the brief), for appellee.

Before ALLEN, McALLISTER and STEWART, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal arising out of an action brought by petitioner, hereinafter called the Brotherhood, under the provisions of 45 U.S.C. § 153(p), 45 U.S.C.A. § 153(p), praying for enforcement of an order of the National Railroad Adjustment Board. The case arises out of the following facts, concerning which there is no controversy:

In the Fall of 1940 Robert E. Levy was employed by respondent Railway Express Agency, Incorporated, hereinafter called the Agency, in Seattle, Wash. as an extra list employee, occupying a regular six-day position entitled "relief sorter." His seniority date was August 16, 1940. Levy has been an officer in the Infantry Reserve since May 26, 1932, being promoted through the offices of Second and First Lieutenant to that of Captain. He was called to active duty as a Captain in the Army Reserve on November 22, 1940. On May 5, 1943, he was appointed Major in the Infantry, Army of the United States. On October 1, 1945, he was eligible for relief from active duty, but on December 20, 1945, he volunteered to continue on active duty for an unlimited period of time.

Early in 1949, while traveling from Germany through Switzerland to Italy, Levy was stopped at the Swiss border by the Swiss police and made to pay duty upon cameras and ball bearings which he had not declared. As a result of this incident Levy's Commanding General gave him the option of facing a court martial upon a charge of carrying contraband from Munich, Germany, across the Swiss border to Milan, Italy, or of resigning from the army for the good of the service. Levy tendered his resignation and on September, 1949, he was given a discharge under other than honorable conditions. Subsequently Levy asked to withdraw his resignation, but this request was refused by the Department of the Army.

Around November 18, 1949, Levy exhibited his discharge to the Agency's general agent at Seattle and requested to be returned to service with the Agency, claiming that he was entitled to reinstatement under a Memorandum of Understanding executed by the Brotherhood and the Agency, on August 6, 1942,

which in certain respects covered rights of Agency employees entering military service. The Agency declined to reemploy Levy and stated that Levy's name would be removed from the Agency's records. It offered to consider reemployment if Levy would authorize the Adjutant General to inform it as to the facts under which Levy's severance from the service was consummated, but Levy refused this permission. A second request for reemployment was refused in February, 1950. The case was submitted to the National Railroad Adjustment Board, which after hearing entered an award sustaining Levy's claim, finding that the Agency had violated the Memorandum of Understanding and Rule 29 of the Collective Bargaining Agreement, ordering the Agency to return Levy to its service with seniority rights unimpaired and with retroactive compensation figured by the District Court to amount to some $20,000 at the time of trial below.

The District Court held that the National Railroad Adjustment Board erred in finding that Rule 29 of the Collective Bargaining Agreement had been violated and that the Memorandum of Understanding entitled Levy to reemployment. The court set aside the decision and award of the Adjustment Board and rendered judgment for the Agency.

The Brotherhood claims that the Memorandum of Understanding broadens the right of an employee discharged from the armed services and in effect dispenses with the statutory provision that, to entitle an employee to reemployment after discharge from military service, completion of his service must have been satisfactory.

The Brotherhood contends that, within the purview of the Memorandum of Understanding, dated August 6, 1942, Levy, upon his application to be restored to employment with the Agency, filed a certificate received from the government as provided by the law, and thus was entitled as of right to reemployment. The Memorandum of Understanding was entered into between the Brotherhood and the Agency for the purpose of covering certain employees, such as extra list employees, not covered by the reemployment provisions of the Selective Training and Service Act of 1940, Section 308.

We do not discuss Levy's praiseworthy combat record nor his explanation of the incident at the Swiss border. The controlling question is whether, under the Memorandum of Understanding, conceded to be valid, the Agency was required to reinstate Levy upon presentation of a certificate of discharge "other than honorable."

We think the judgment of the District Court was clearly correct. Both the Resolution of the 76th Congress and the Selective Training and Service Act make the receipt of a certificate showing satisfactory completion of service a prerequisite of employment. 50 U.S.C.Appendix, §§ 308, 403.[1] The Memorandum of Understanding in its pertinent parts reads as follows:

"Pursuant to Federal legislation (i.e., Public Resolution No. 96 of the 76th Congress, and the Selective Training and Service Act of 1940) any employe of Railway Express Agency who has established a seniority date and who shall be ordered or inducted into the land or naval forces in accordance with such legislation, or has enlisted in the land or naval forces after the declaration of the existence of an emergency by the President of the United States on September 8, 1939, shall, upon completion of such service in the land or naval forces, be restored to such position with Railway Express Agency (including rights to promotion) to which his accumulated seniority entitles him, all in accordance with the then existing rules of the schedule agreement, the same as if he had remained in the service (such right to be exercised by the individual within five days from his reporting for duty), provided, upon com-

---

I. Now 50 U.S.C.A.Appendix, § 459.

pletion of his service he receives from the Government a certificate as provided by the law, or other proper evidence of release, is still qualified to perform the duties of such position, makes application for return to service within forty days after he is released from such training and service. * * * "

█ It is the general rule that statutes relating to the subject matter of a contract and existing at the time of the execution of such contract become a part thereof and must be read into the contract, except when a contrary intention appears. Armour Packing Co. v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681; Denny v. Bennett, 128 U.S. 489, 9 S.Ct. 134, 32 L.Ed. 491; Connecticut Mutual Life Ins. Co. v. Cushman, 108 U.S. 51, 2 S.Ct. 236, 27 L.Ed. 648; 12 Am. Jur., 769, Section 240, Note 6 and cases cited from 30 states.

█ The Selective Training and Service Act of 1940 in its "direct or necessary legal operation controlled" the obligations of the contract, Connecticut Mutual Life Ins. Co. v. Cushman, supra, 108 U.S. at page 65, 2 S.Ct. at page 245, and therefore the parties must be assumed to have contracted with reference to the statute. Moreover, the text of the Memorandum of Understanding expressly refers to the Act and also requires as a condition of reinstatement the presentation of a certificate showing completion of military service "as provided by the law." The Memorandum begins with the phrase "Pursuant to Federal legislation" and immediately thereafter cites both the Congressional Resolution and the Selective Training and Service Act of 1940. As correctly held by the District Court, "pursuant" means in conformity to. The Memorandum of Understanding therefore under its express terms was drawn in conformity to 50 U.S.C.Appendix, § 308. The applicable expressions of the Congressional Resolution and the applicable provisions of the Selective Training and Service Act of 1940 are thus incorporated by reference in the Memorandum of Understanding.

This conclusion is reinforced by the subsequent terms of the Memorandum of Understanding which, in providing for restoration to service with the Agency, imposes alternative conditions for such restoration: The applicant must show (1) that "upon completion of his service he receives from the Government a certificate as provided by the law, or (2) other proper evidence of release * *." Since the certificate to be presented is one provided by the law it necessarily is the certificate received upon satisfactory completion of service. Selective Training and Service Act of 1940, Section 308. These alternative conditions read with the statute clearly require that the applicant for reinstatement must present a certificate of satisfactory completion of service, or, if he does not have such a certificate, he must present some other evidence of satisfactory completion of service.

The Brotherhood contends, and the Railway Adjustment Board in effect decided that, having presented a certificate not in compliance with the statute, and not in compliance with condition (1) of the Memorandum of Understanding, exactly the same evidence is to be received under condition (2) of the Memorandum and entitles the applicant as a matter of right to reinstatement.

█ But satisfactory completion of service does not include completion "under other than honorable conditions." Moreover, the conclusion of the Board ignores both the rule of *ejusdem generis* and the use in condition (2) of the Memorandum of the term "proper evidence of release." Under the rule of *ejusdem generis*, where no intention to the contrary appears, general words after specific terms are confined to things of the same kind with the things previously described and specified. Swift & Co. v. Columbia Ry., Gas & Electric Co., 4 Cir., 17 F.2d 46, 51 A.L.R. 983, opinion by Judge Parker; Carnegie Steel Co. v. United States, 240 U.S. 156, 165, 36 S.Ct. 342, 60 L.Ed. 576; Gohlke v. Hawkeye Commercial Men's Ass'n, 198 Iowa 144, 197 N.W. 1004, 35 A.L.R.

1177; Allen v. Berkshire Mutual Fire Ins. Co., 105 Vt. 471, 168 A. 698, 89 A.L.R. 460; Freeland v. Freeland, 6 Cir., 110 F.2d 966; 12 Am.Jur. 779, Section 244. Under this rule the phrase "other proper evidence of release" carries with it the same limitation as the phrase requiring presentation of a certificate "as provided by the law," namely, evidence, though different, of satisfactory completion of service.

Here no contrary intent appears compelling us to ignore the *ejusdem generis* rule. In fact, the proposition that "other proper evidence of release" was intended to include such evidence as that of discharge "other than honorable" under this record was not shown to have been mentioned between the parties prior to this controversy.

It would nullify the specific requirement of the Memorandum as to the kind of certificate demanded as provided by the law, namely, a certificate of satisfactory completion of service, if a former employee who had no certificate of satisfactory completion of service and, in fact, had not satisfactorily completed his service, could compel reemployment upon the ground that, while his certificate was not in compliance with Section 308, it was "other proper evidence of release." Such a. holding not only ignores the long-established rule of construction discussed above but also ignores the use of the word "proper." Among applicable definitions in Webster's New International Dictionary this word means "appropriate," "suitable," "right," "fit," or "correct." It is not appropriate, suitable, right, fit, or correct, evidence of release to tender a discharge granted for other than honorable reasons.

■ The Brotherhood's contention that the Agency violated Rule 29 by failing to investigate Levy's case and grant him a hearing has no merit. The investigation and hearing provided for under Rule 29 are granted to an employee disciplined or dismissed. But Levy was neither disciplined nor dismissed by the Agency. He was not reinstated as employee and therefore was not entitled to the rights of an employee.

■■ It is also urged that the District Court is not authorized to set aside the award of the Railroad Adjustment Board. The statute, 45 U.S.C. § 153(p), 45 U.S.C.A. § 153(p), provides that, while the findings and order of the division of the Adjustment Board shall be prima facie evidence of the facts therein stated, the district courts are empowered, "under the rules of the court governing actions at law, * * * to enforce or set aside the order of the division of the Adjustment Board." This is not a case where the District Court has invaded jurisdiction conferred on the Adjustment Board by the Railway Labor Act. Cf. Slocum v. Delaware, Lackawanna & Western Railroad Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795. The Agency has been given, in compliance with the statute, the first opportunity to pass on the issues. Cf. Order of Railway Conductors of America v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318. The case had full hearing, both before the Board and in the District Court, under the express statutory authority. We recognize that the Agency carries the burden of showing that the award of the Adjustment Board is wrong. Elgin, Joliet & Eastern Railway Co. v. Burley, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928.

We have been cited to no decision which holds that a Federal statutory requirement of showing satisfactory completion of military service as a condition of reemployment, incorporated by reference into an agreement between union and employer, may be eliminated by a decision of the Board that the requirement is satisfied by a certificate of service "other than honorable." The District Court's findings on this point are sustained by the record and it acted within its statutory powers.

We deem it unnecessary to discuss the question whether or not Levy was qualified for reemployment.

The judgment of the District Court is affirmed.